**Linda BELIVEAU, Plaintiff,**

v.

**Chris CARAS, James Rickell, and Does 1 through 25, inclusive, Defendants.**

**No. CV 94–5398 RAP (CTx).**

United States District Court,
C.D. California.

Jan. 6, 1995.

Angela M. Brown, Bodkin, McCarthy, Sargent & Smith, Los Angeles, CA.

Sue Ann Howard, Baumberger & Howard, Lancaster, CA.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

PAEZ, District Judge.

On October 17, 1994, the Court heard defendants Chris Caras' and James Rickell's motion for partial dismissal of plaintiff's First Amended Complaint. After fully considering the moving, opposition, and reply papers, exhibits submitted in connection with the request to take judicial notice, authorities, and counsel's oral arguments, the Court denies the motion with respect to the First, Seventh, and Eighth Causes of Action, and grants the motion without leave to amend the Second, Third, Sixth, Ninth, Tenth, and Eleventh Causes of Action.

I

### PROCEDURAL BACKGROUND

Plaintiff Linda Beliveau ("Beliveau") filed an action in Los Angeles Superior Court on

February 24, 1994 against defendants Chris Caras, James Rickell, and Does 1 through 25 for sex discrimination in defendants' "operation of their apartment complex in violation of the California Fair Employment and Housing Act (Government Code §§ 12940 et seq)." She asserted causes of action for housing discrimination, negligent hiring, negligent supervision, sexual assault, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Defendants demurred to the complaint. On June 16, 1994, the Superior Court sustained the demurrer without leave to amend on the causes of action for housing discrimination, sexual assault (against Caras), intentional infliction of emotional distress (against Caras), and negligent infliction of emotional distress (against Caras). Leave to amend was granted with respect to the negligent hiring and negligent supervision causes of action.

On July 5, 1994, plaintiff filed a First Amended Complaint ("FAC") alleging the following causes of action: (1) discrimination in housing (42 U.S.C. § 3604 et seq.); (2) negligent hiring (unamended); (3) negligent supervision (unamended); (4) sexual battery (against Rickell) (5) intentional infliction of emotional distress (against Rickell); (6) negligent infliction of emotional distress (against all defendants and without court permission); (7) violation of the Ralph Civil Rights Act (Civ.C. § 51.7); (8) violation of the Unruh Act (Civ.C. § 51); (9) breach of the covenant of good faith and fair dealing; (10) breach of the covenant of quiet enjoyment (Civ.C. § 1927); and (11) intentional nuisance (Civ.C. § 3479). Pursuant to Federal Rule of Evidence 201, the Court hereby takes judicial notice of the pleadings and records in the Los Angeles Superior Court.

Defendants removed the case to federal court on August 9, 1994 based on the federal claim for discrimination in housing. Defendants Caras and Rickell moved to dismiss the First, Second, Third, and Sixth through Eleventh Causes of Action.

## II

### RELEVANT FACTUAL BACKGROUND

The following facts, which the Court must accept as true for purposes of the instant motion, are alleged in the First Amended Complaint ("FAC").

Plaintiff rents an apartment in Redondo Beach. Defendant Chris Caras owns and operates the building; defendant James Rickell is the resident manager.

In about July/August 1993, Beliveau noticed that Rickell was staring at her while she was laying out by the apartment pool in her bathing suit. During that same time period, Rickell "began making off-color, flirtatious and unwelcome remarks to Beliveau." FAC, ¶ 10. Also during this time frame, Rickell "went to Plaintiff's apartment to repair a water leak in her shower, when he thereafter called her into the bathroom, proceeded to put his arm around her, told her she was an attractive woman, he would like to keep her company any time, and made a remark about her breasts, referring to them as 'headlights.'" Id., ¶ 11, Beliveau pushed him away, and he "grabbed her breast, and, after being pushed away again, grabbed her buttock as she walked away from him." Id., ¶ 12.

## III

### DISCUSSION

#### A. Standard on Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to test the "legal sufficiency of the claim or claims stated in the complaint." Schwarzer, Tashima and Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* ("*Fed.Civ.Proc.*"), § 9:187 (1994), *citing Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The motion is disfavored; "dismissal is proper only in 'extraordinary' cases." *Fed. Civ.Proc.,* § 9:210, *citing United States v. Redwood City,* 640 F.2d 963 (9th Cir.1981).

In evaluating the motion, the Court looks only to the face of the complaint to determine whether there are defects. *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir. 1991); *see also Fed.Civ.Proc.,* § 9:211. The

complaint is construed in the light most favorable to the plaintiff. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir.1980); *Fed.Civ. Proc.*, § 9:213. In addition, "the court must accept as true all material allegations in the complaint, as well as *reasonable inferences* to be drawn from them." *Fed.Civ.Proc.*, § 9:215 (emphasis in original), *citing NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). In short, the "test is whether the facts, as alleged, support *any* valid claim entitling the plaintiff to relief," regardless of whether plaintiff erroneously used the wrong legal theory. *Fed.Civ.Proc.*, § 9:227 (emphasis in original); *Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir.1985).

## B. *Federal Housing Discrimination Claim*

Title VIII or the Housing Rights Act of 1968, the Fair Housing Act, 42 U.S.C. §§ 3601–3619, prohibits, among other things, sexual discrimination in housing. 42 U.S.C. § 3604(b) provides in relevant part:

[I]t shall be unlawful—

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

The application of sexual harassment doctrine to cases under Title VIII is relatively new. The first district court to find sexual harassment to constitute impermissible housing discrimination did so in *Shellhammer v. Lewallen*, Fair Hous.—Fair Lend. Rep. (P–H) ¶ 15,472 (W.D.Ohio Nov. 22, 1983). In that case, a landlord requested that plaintiff pose for nude photographs and engage in sexual intercourse with him. Plaintiff refused, and, as the Shellhammers alleged, this prompted the landlord to commence eviction proceedings on the pretext of their purported nonpayment of rent.

The court reviewed the arguments for and against allowing a housing discrimination claim to be based on sexual harassment. The court noted that, in the employment context, other courts had not found the absence of express authorization in the text or legislative history of Title VII to justify rejecting such claims. Moreover, both Title VII and Title VIII were "designed to eradicate the effects of bias and prejudice. Their purposes are, clearly, the same; only their field of operation differs." Indeed, as the Chief Judge of that district had explained, "The [Fair Housing] Act ... is to be construed generously to ensure the prompt and effective elimination of all traces of discrimination within the housing field." *Id.*, p. 16,-128, *quoting United States v. City of Parma*, 494 F.Supp. 1049, 1053 (N.D. Ohio 1980), *aff'd*, 661 F.2d 562 (6th Cir.1981). The district judge in *Shellhammer* concluded that, "[i]n view of the policy of broad interpretation of the Fair Housing Act, the statute's remedial purposes, and the absence of any persuasive reason in support of the defendant's contentions that sexual harassment is not actionable under the Act," it was "entirely appropriate to incorporate this doctrine into the fair housing area." *Id.*

The judge then explained that in the housing area, "sexual harassment would consist of either creating an 'offensive environment,' or conditioning tenancy or continued tenancy, upon sexual consideration." *Id.* The court found the latter form of sexual harassment to be present.

Since *Shellhammer*, additional courts have agreed that sexual harassment is an actionable form of housing discrimination. In *New York ex rel. Abrams v. Merlino*, 694 F.Supp. 1101 (S.D.N.Y.1988), the state and four individual female plaintiffs, two of whom were African–American, sued a real estate broker and three real estate salespersons for an alleged pattern and practice of race and sex discrimination in providing real estate brokerage services. Plaintiffs alleged that, among other things, defendant Merlino "subject[ed] his female customers to unwanted physical touching and to suggestive sexual comments and propositions." 694 F.Supp. at 1102. Judge Goettel noted his reluctance at the motion to dismiss stage to find that a claim for sexual harassment could not be stated, and denied the motion to dismiss. *Id.* at 1104.

More recently, in *Honce v. Vigil*, 1 F.3d 1085 (10th Cir.1993), the Tenth Circuit recognized sexual harassment as a basis for a Fair

Housing Act discrimination claim. The court noted that employment discrimination cases provided helpful guidance. 1 F.3d at 1088. The court explained:

> Applied to housing, a claim is actionable when the offensive behavior unreasonably interferes with use and enjoyment of the premises. The harassment must be 'sufficiently severe or pervasive' to alter the conditions of the housing arrangement ... It is not sufficient if the harassment is isolated or trivial.... ' "[C]asual or isolated manifestations of a discriminatory environment ... may not raise a cause of action." ' ... The offensive acts need not be purely sexual; it is sufficient that they would not have happened but for claimant's gender.

*Id.* at 1090 (citations omitted). The court found defendant's conduct, which escalated from asking her out to threats of eviction, to be "eccentric, and probably unwarranted," but because his behavior was not sexual or directed only at women, it was not actionable. *Id.*

■ In sum, it is beyond question that sexual harassment is a form of discrimination. Moreover, as the above cases make clear, the purposes underlying Titles VII and VIII are sufficiently similar so as to support discrimination claims based on sexual harassment regardless of context. Indeed, it is the behavior that the law seeks to eradicate. The basic principles thus apply as strongly in the housing situation as in the workplace.[1] At this point, then, it is appropriate to turn to this circuit for guidance on the applicable standards in sexual harassment cases.

The Ninth Circuit set forth the parameters of sexual harassment claims in employment in *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). There, an Internal Revenue Service agent became the object of another agent's affections. He wrote her notes, asked her for dates, and otherwise made the working environment extremely uncomfortable for her with his unsolicited attention. 924 F.2d at 873–75. After attempting to resolve the problem through administrative proceedings, Ellison finally sued. The district court granted summary judgment for the government on the ground that plaintiff had "failed to state a prima facie case of sexual harassment due to a hostile working environment." Plaintiff appealed. *Id.* at 875.

The Ninth Circuit reversed. The court noted first that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id., quoting King v. Board of Regents of University of Wisconsin System*, 898 F.2d 533, 537 (7th Cir.1990) ("[a]lthough a single act can be enough, ... generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident.")

The court explained that harassment should be analyzed from the victim's perspective. Women's viewpoints differ widely, the court acknowledged. But certain realities persist. Notably, women remain disproportionately vulnerable to rape and sexual assault, which can and often does shape women's interpretations of words or behavior of a sexual nature, particularly if unsolicited or occurring in an inappropriate context. *Id.* at 879. Such differences in experience and perception are a regrettable function of the society we live in, not an inevitability grounded in biology.

Regardless of the source, though, the net result of the disparate experiences of women and men concerning harassment, as the Ninth Circuit recognized, is that a single standard *perpetuates* inequalities: "a sex-blind reasonable person standard tends to be male-biased and tends to systematically ignore the experiences of women." *Id.* at 879.

---

**1.** One commentator has suggested that sexual harassment in the home is in some respects more oppressive: "When sexual harassment occurs at work, at that moment or at the end of the work day, the woman may remove herself from the offensive environment. She will choose whether to resign from her position based on economic and personal considerations. In contrast, when the harassment occurs in a woman's home, it is a complete invasion in her life. Ideally, home is the haven from the troubles of the day. When home is not a safe place, a woman may feel distressed and, often, immobile." Comment, "Home is No Haven: An Analysis of Sexual Harassment in Housing." 1987 *Wis.L.Rev.* 1061, 1073 (Dec.1987).

The goal is a level playing field and "a gender-conscious examination of sexual harassment enables women to participate in the workplace on an equal footing with men." *Id.* The court added: "By acknowledging and not trivializing the effects of sexual harassment on reasonable women, courts can work towards ensuring that neither men nor women will have to 'run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living.'" *Id.* at 879–80, *quoting Henson v. Dundee,* 682 F.2d 897, 902 (11th Cir.1982).[2]

Applying the reasonable woman standard to the facts, the Ninth Circuit did not find Ellison's reaction to be hyper-sensitive:

> We believe that a reasonable woman could have had a similar reaction. After receiving the first bizarre note from Gray, a person she barely knew, Ellison asked a co-worker to tell Gray to leave her alone. Despite her request, Gray sent her a long, passionate, disturbing letter. He told her he had been "watching" and "experiencing" her; he made repeated references to sex; he said he would write again. Ellison had no way of knowing what Gray would do next.

*Id.* Despite the lack of evidence of any malicious intent on Gray's part, the court refused to regard Gray as a "modern-day Cyrano de Bergerac wishing no more than to woo Ellison with his words." *Id.*

■ In the instant case, plaintiff has alleged several incidents in which defendant Rickell made "off-color, flirtatious and unwelcome remarks." In addition, she has alleged an incident of offensive touching, which, if proved, would constitute a sexual battery under California Civil Code § 1708.5.[3] *Any* such touching would support a sexual harassment claim under the federal Fair Housing

Act. Particularly where, as here, the alleged battery was committed (1) *in* plaintiff's own home, where she should feel (and be) less vulnerable, and (2) by one whose very role was to provide that safe environment, defendants' contention that plaintiff has failed to allege "conduct that was so severe or pervasive to 'alter the conditions' of plaintiff's housing environment" and has failed to "allege an 'abusive' housing environment" resulting from defendants' conduct is not well-taken. There are few clearer examples of classic sexual harassment than an unpermitted, allegedly intentional, sexual touching. Under no circumstances should a woman have to risk further physical jeopardy simply to state a claim for relief under Title VIII. Plaintiff has adequately alleged the requisite offensive housing environment. The motion to dismiss this claim is denied.[4]

### C. Other Claims

#### 1. Claims Subject to Court Ruling on Demurrer

Before this case was removed, defendants demurred successfully to the causes of action for negligent hiring, negligent supervision, and negligent infliction of emotional distress. Plaintiff was given leave to amend the first two, but did not do so. The court did not give plaintiff leave to amend the negligent infliction cause of action as to the property owner, defendant Caras.

■ On removal, the state court's rulings stand, unless or until modified by a federal court. *Fed.Civ.Proc.,* § 2:1018, *citing Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566 (N.D.Cal.1981). Thus, Caras is hereby dismissed (again) from the sixth cause of action for negligent infliction of emotional distress.

---

2. The court recognized that the "reasonable victim standard" would "classif[y] conduct as unlawful sexual harassment even when harassers do not realize that their conduct creates a hostile working environment." *Id.* at 880. The burden, then, would be on employers to "educate and sensitize their workforce[.]" *Id.*

3. Civ.C. § 1708.5(a)(1) provides that "A person commits a sexual battery who does any of the following: (1) Acts with the intent to cause a harmful or offensive contact with the intimate

part of another, and a sexually offensive contact with that person directly or indirectly results." Both "buttock" and "breast of a female" are "intimate parts" within the meaning of the statute. § 1708.5(d).

4. The Court notes that, effective January 1, 1995, new California Civil Code § 51.9 will specifically authorize a cause of action for sexual harassment by, among others, a tenant against a landlord or property manager.

As for the other two claims, the court granted the demurrers on the grounds stated in the papers, specifically, failure to state a cognizable duty owed to plaintiff. At oral argument on October 17, 1994, plaintiff's counsel agreed that the motion to dismiss these claims should also be granted.

### 2. Ralph Civil Rights Act

Plaintiff's Seventh Cause of Action asserted a violation of the Ralph Civil Rights Act of 1976, Civil Code § 51.7, which provides in relevant part:

> All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, or position in a labor dispute. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

Defendants have challenged the claim with respect to Caras, arguing that only the actual harasser is potentially liable for any violation. Defendants relied on a series of cases in which courts have declined to apply the doctrine of respondeat superior to hold school district employers liable for the sexual torts of their employees.

■ It is, of course, well-established under California law, which controls on this claim, that the doctrine of respondeat superior may support a finding of employer liability for "torts committed by an employee within the scope of employment." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 208, 285 Cal. Rptr. 99, 814 P.2d 1341 (1991), *citing Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 967, 227 Cal.Rptr. 106, 719 P.2d 676 (1986). The California Supreme Court affirmed the rationale for the doctrine as "based on ' "a deeply rooted sentiment" ' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." *Id.* at 208, 285 Cal.Rptr. 99, 814 P.2d 1341 (citations omitted).

In *Mary M.*, the California Supreme Court stated again that for respondeat superior to apply, plaintiff had to "prove that the employee's tortious conduct was committed within the scope of employment." *Id.* at 209, 285 Cal.Rptr. 99, 814 P.2d 1341. That is, courts should inquire as to whether the risk may be fairly regarded " 'as typical of or broadly incidental' to the enterprise undertaken by the employer." *Id.* (citations omitted). Even conduct that "violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment." *Id.* Tortious acts that do not benefit the employer or that are willful or malicious in nature may still be within the scope of employment. *Id.* Moreover, "[t]he doctrine of respondeat superior applies to public and private employers alike." *Id.*

The California Supreme Court reiterated that courts must also consider three policy objectives in determining whether the doctrine of respondeat superior applies in a particular case. First, courts must evaluate whether imposing liability "may prevent recurrence of the tortious conduct" by " 'creating a strong incentive for vigilance by those in a position "to guard substantially against the evil to be prevented." ' " *Id.* at 214, 285 Cal.Rptr. 99, 814 P.2d 1341 (citation omitted). Second, courts consider whether imposing liability will "give greater assurance of compensation to the victim." *Id.* at 215, 285 Cal.Rptr. 99, 814 P.2d 1341. And third, courts are to determine whether it is appropriate to "spread[ ] the risk of loss among the beneficiaries of the enterprise[.]" *Id.* at 216, 285 Cal.Rptr. 99, 814 P.2d 1341.

Whether certain conduct, such as the unwanted touching and allegedly offensive remarks here, occurs within the scope of employment is ordinarily a question of fact, unless the facts are undisputed. *Farmers Insurance Group v. County of Santa Clara*, 26 Cal.App.4th 1154, 31 Cal.Rptr.2d 874, 878 (1994). The Court cannot make factual determinations on a motion to dismiss; rather, the inquiry is whether the facts as alleged are sufficient to state a claim.

■ In the instant case, plaintiff has alleged that defendant Rickell was the resident manager and was employed by defendant Caras. Plaintiff further alleged that "each of

the Defendants herein was, at all times relevant to this action, the *agent, employee,* representing partner, or joint venturer of the remaining Defendants and was acting within the course and scope of that relationship." FAC, ¶ 6 (emphasis added). Moreover, the occasion for Rickell's presence in plaintiff's apartment was to repair a leaky shower faucet, that is, to perform one of his duties as resident manager. FAC, ¶ 11. It is thus reasonable to infer from the facts that Rickell was on the premises, that is, in the bathroom of Ms. Beliveau's unit, on a job-related task.

There is little question that courts have demonstrated ambivalence concerning the proper characterization of an employee's behavior when he allegedly commits a sexual battery or rape while "on duty." The California Supreme Court found the City of Los Angeles to be liable when one of its police officers raped a woman after he took her home when she performed poorly on a field sobriety test. *Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at 214, 285 Cal.Rptr. 99, 814 P.2d 1341. The Supreme Court concluded in that case that the determination to impose liability on an employer required the court to decide whether doing so would achieve the three policy objectives. In *Mary M.,* the Court emphasized that police officers' duties included use of force when the occasion merited it. The Court found sexual assault to be "broadly incidental to the enterprise of law enforcement," recognizing implicitly that rape is an act of force and violence, not sex. *Id.* at 218, 285 Cal.Rptr. 99, 814 P.2d 1341. As a result, imposing liability on the City of Los Angeles was consistent with the policy objectives of the respondeat superior doctrine.

Decisions following *Mary M.,* however, have not made it possible to articulate a bright line rule on when respondeat superior ought to apply. For example, in *Debbie Reynolds Professional Rehearsal Studios v. Superior Court,* 25 Cal.App.4th 222, 30 Cal. Rptr.2d 514 (1994), the Court of Appeal determined that the defendant dance studio could not be held vicariously liable for the alleged batteries and molestation that one of the dance instructors committed against

plaintiff: "His wrongful conduct was so divorced from his duties and work that, as a matter of law, it was outside the scope of his employment. He was hired to teach dance, not to molest, abuse, or threaten minors. Sexual abuse simply is not typical of or broadly incident to the enterprise undertaken by petitioner." *Id.* at 227, 30 Cal.Rptr.2d 514. The court further found that the abuse was not foreseeable, which made it unfair to require the employer to bear the cost of the loss. *Id.* at 227–28, 30 Cal.Rptr.2d 514. The court's decision comported with the school district-employee line of cases, leaving *Mary M.* to support an exception for sexual assaults by police officers to the "rule" of no respondeat superior liability.

Less than six months later, however, another division of the same district court of appeal appears to have confused the issue somewhat. In *Morin v. Henry Mayo Newhall Memorial Hospital,* 29 Cal.App.4th 473, 34 Cal.Rptr.2d 535 (1994), the court denied a hospital's motion for summary judgment. The hospital had contended that respondeat superior could not apply to render it liable for the sexual battery committed by its ultrasound technician on a pregnant patient. The court relied on *Mary M.,* but, for obvious reasons, did not analogize the police officer's and ultrasound technician's respective abilities to use force in the scope of their employment. Rather, the court of appeal stressed the similarities in the "indicia of authority" each employee possessed, which led the plaintiffs in each case to trust the wrongdoer. The court of appeal explained that, as in *Mary M.,* abuse of the type that actually occurred was foreseeable and justified imposing the resulting costs on the hospital. The court of appeal then attempted to distinguish the authority and position of trust that a teacher possessed from that reposed in the ultrasound technician so as to support the decision to apply the respondeat superior doctrine. *Id.* at 479–81, 34 Cal.Rptr.2d at 539.

As the above examples demonstrate, the line-drawing in the subset of respondeat superior cases involving sexual assaults and batteries is highly fact-specific. As discussed, plaintiff here has plainly alleged facts

from which the Court may infer that defendant Rickell was acting within the scope of his employment when he purportedly committed the acts of sexual battery. He occupied a position of trust which allowed him to gain access to plaintiff's home. Whether, as the resident manager, his duties were more akin to those of a police officer or an ultrasound technician, thus supporting application of respondeat superior, or whether he was more like a teacher, which might allow the building owner, defendant Caras, to escape liability, requires the Court to make (necessarily) artificial distinctions. The Court declines to do so at this stage of the proceedings. Plaintiff has alleged facts adequate to state a claim under the Ralph Civil Rights Act,[5] and the motion to dismiss this cause of action is denied.

### 3. Unruh Civil Rights Act

 The Unruh Civil Rights Act, Civil Code § 51, provides in relevant part:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, privileges, or services in all business establishments of ever kind whatsoever.

The Unruh Civil Rights Act is to be liberally construed. *Lambert v. Mandel's of Cal.*, 156 Cal.App.2d Supp. 855, 856, 319 P.2d 469, 470 (1958); *Crowell v. Isaacs*, 235 Cal.App.2d 755, 757, 45 Cal.Rptr. 566, 567 (1965); *Winchell v. English*, 62 Cal.App.3d 125, 128, 133 Cal.Rptr. 20, 21 (1976). Those engaged in sale or rental of real property are covered by the Act. 58 Ops.Atty.Gen. 608 (August 21, 1975).

 Defendants contend that Civil Code § 51 does not by its term prohibit sexual harassment. Defendants rely on *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873 (1991).

Although the California Supreme Court did decide in *Harris* that economic discrimination and sex discrimination based on disparate impact were not cognizable under the Unruh Act, the Court nonetheless described the liberal construction of Civ.C. § 51 at considerable length. It may well be the case that the California Supreme Court will not, ultimately, allow sexual harassment claims under the Unruh Act. But it has not precluded these claims yet, and both the policy of liberal construction and the plain language of the provision should permit plaintiff to go forward. The motion to dismiss on this claim is denied.

### 4. Breach of the Covenant of Good Faith and Fair Dealing

The Second Restatement of Contracts, quoted in 1 B. Witkin, *Summary of California Law,* "Contracts" (9th ed. 1987) § 744, provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Plaintiff did not contest defendants' argument that plaintiff has no contract with Rickell and that Caras is not alleged to have done anything to breach the rental agreement. Def. Mot., pp. 19–20. As plaintiff has not even alleged a breach of contract claim in the FAC, she would seem to be missing a key element of her breach of implied covenant claim, whether pled in contract or tort. In any event, at oral argument, plaintiff's counsel consented to dismissal of this claim.

### 5. Breach of the Covenant of Quiet Enjoyment

As Professor Witkin has explained, "[i]n every lease, there is an implied covenant by the lessor of *quiet enjoyment* and possession during the term." 4 B. Witkin, *Summary of*

---

**5.** The doctrine of respondeat superior also applies in the context of Federal Housing Act claims. *Chicago v. Matchmaker Real Estate Sales Center,* 982 F.2d 1086, 1096 (7th Cir.1992). Regardless of whether the principal authorized or prohibited the agent's acts, the principal may still be liable if the acts were within the scope of the agent's apparent authority. Moreover, "[a]

principal cannot free itself of liability by delegating to an agent the duty not to discriminate." *Id.* (citation omitted). As the Sixth Circuit added, "Federal courts have routinely applied these principles in fair housing cases and held principals liable for the discriminatory acts of their agents." *Id.*

*California Law,* "Real Property" (9th ed. 1987), § 573 (emphasis in original); Civ.C. § 1927.[6] Witkin added that the "covenant is a warranty by the lessor against his *own acts,* not against those of strangers." *Id.* (emphasis in original; citations omitted). The covenant is breached by eviction—actual or constructive. *Id.*

■ Here, plaintiff has alleged that she "continues to be, a resident of ... the 'RENTAL PREMISES[.]'" FAC, ¶ 2. As a result, she cannot state a claim for breach of the implied covenant of quiet enjoyment based on either actual *or* constructive eviction. This claim is therefore dismissed.

### 6. *Intentional Nuisance*

Nuisance is defined in the Civil Code as follows:

> § 3479. Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

Quoting the Second Restatement of Torts, Witkin stated: "[Private nuisance] covers the invasion of the private interest in the use and enjoyment of land. In its origin it was purely tortious in character, and it has remained so. *It is always a tort against land,* and the plaintiff's action must always be founded upon his interest in the land." 11 B. Witkin, *Summary of California Law,* "Equity" (9th ed. 1990), § 122 (emphasis added). A single act can constitute a nuisance. *Id.,* § 123 (citation omitted).

■ Assuming that plaintiff's tenancy is an interest in land sufficient to confer standing for purposes of a nuisance claim (*see Jones v. Kelly,* 208 Cal. 251, 255 (1929)), it nevertheless does not appear that she has stated a nuisance claim based on Rickell's conduct. In the case plaintiff cites, *Stoiber v. Honeychuck,* 101 Cal.App.3d 903, 162 Cal. Rptr. 194 (1980), the court allowed a tenant to state a nuisance claim for the dilapidated and unsafe conditions of the rented premises. Plaintiff challenged the landlord's and his agents' failure to make repairs.

Here, though, the "nuisance" is Rickell's alleged sexual battery, not his *failure to* make repairs. True, the incident occurred while he was in the apartment to repair the shower. This appears to be incidental, for nuisance purposes, to the harm plaintiff allegedly suffered. It is his unwelcome comments and offensive touching, combined with the fact he was the apartment manager, not his failure to make necessary repairs in her unit, that is the gravamen of her complaint. The motion to dismiss is also granted on this claim.

## IV

### *CONCLUSION*

For the reasons set forth above **IT IS HEREBY ORDERED** that defendants' motion to dismiss with respect to the First, Seventh, and Eighth Causes of Action is **denied.** The motion regarding the Second, Third, Sixth, Ninth, Tenth, and Eleventh Causes of Action is **granted** without leave to amend.

---

**6.** Civil Code § 1927 provides: "An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same."