770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THOMAS SHELLHAMMER; TAMMY SHELLHAMMER, INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
NORMAN LEWALLEN, JACQUELINE LEWALLEN, DEFENDANTS-APPELLEES.
 NO. 84-3573
 United States Court of Appeals, Sixth Circuit.
 7/31/85
 
 N.D.Ohio
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: MARTIN and WELLFORD, Circuit Judges; and EDWARDS, Senior ircuit Judge.
 PER CURIAM.
 
 
 1
 Thomas and Tammy Shellhammer appeal the decision of the district court denying them part of the relief they sought under the Fair Housing Act, 42 U.S.C. Secs. 3600-3619 and denying their motion for class certification. We affirm.
 
 
 2
 In March 1982, Thomas and Tammy Shellhammer entered into a month-to-month tenancy for the rental of an apartment owned by the appellees, Norman and Jacqueline Lewallen. Shortly after they moved into the apartment, Norman Lewallen approached Tammy Shellhammer, while she was cleaning an apartment for him, and asked her to pose for nude pictures for him. Shellhammer refused and informed her husband of the incident. Approximately one month later, when Norman Lewallen had again taken Tammy Shellhammer to clean one of his vacant apartments, Lewallen asked her to have sexual relations with him and offered to pay her money for that purpose. She again refused and reported the occurrence to her husband.
 
 
 3
 In July of that same year, the Shellhammers and the Lewallens had a dispute over payment of rent. The Shellhammers claimed that the Lewallens were responsible for providing a working refrigerator, and they wanted to use that month's rent to procure a new refrigerator. The Lewallens apparently maintained that they were not responsible for the refrigerator. In any case, rent was not paid in a timely manner, and the Lewallens instituted eviction proceedings. The Shellhammers were forced to move to a new apartment and to incur larger rent payments.
 
 
 4
 On October 26, 1982, the Shellhammers filed suit against the Lewallens claiming that they had been deprived of rights secured by the Fair Housing Act, 42 U.S.C. Secs. 3601-3619. The Shellhammers styled their claim as a class action on behalf of timeselves and others similary situated who had inquired about, applied for, and/or rented presently or in the future dwelling units owned or managed by the Lewallens. On February 7, 1983, the Shellhammers filed a motion to certify the class.
 
 
 5
 On November 7 and 8, 1983, the magistrate, who had been assigned the case at the parties' consent, held a trial on the Shellhammers' individual claims without first ruling on the Shellhammers' class certification motion. The Shellhammers objected to this procedure, arguing that a class certification decision should precede a hearing on the merits. The magistrate, who apparently was not aware of the motion to certify until shortly before the trial, decided to proceed with trial and to hold the class certification motion in abeyance.
 
 
 6
 On November 22, the magistrate entered his decision in the case. He found that the Shellhammers were asserting two distinct legal theories for liability. First, they were arguing that Lewallens' sexual harassment created an offensive environment for their tenancy. Second, the Shellhammers were claiming that the Lewallens had made their tenancy subject to sexual consideration. By analogizing their claim to a Title VII action, see Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982), the magistrate found that both theories of relief stated viable legal claims under the Fair Housing Act.
 
 
 7
 Having recognized the viability of the plaintiffs' claim, the magistrate then considered whether the Shellhammers had factually proven their claims. With respect to the Shellhammers' 'hostile environment' claim, the magistrate found that the plaintiffs had failed to carry their burden of proof. The magistrate stated:
 
 
 8
 With reference to plaintiff's first claim--that the landlord's conduct subjected her to a hostile environment as a result of her sex, it is clear that she has failed to satisfy the elements of this claim as defined above. She points to two requests during the three or four months of her tenancy. This does not amount to the pervasive and persistent conduct which is a predicate to finding that the sexual harassment created a burdensome situation which caused the tenancy to be significantly less desirable than it would have been had the harassment not occurred. The plaintiffs, therefore, are not entitled to relief on the first aspect of her claim.
 
 
 9
 With respect to the Shellhammers' second claim--that they had been evicted because Mrs. Shellhammer had rebuffed Mr. Lewallen's sexual advances, the magistrate found the Shellhammer's had factually proven their claim. The Shellhammers were eventually awarded $7,410 for this claim.
 
 
 10
 On March 22, 1984, the magistrate issued another opinion in the case dealing with the plaintiff's motion for class certification. The magistrate found that the Shellhammers would not be the proper representatives of a class that included all females, and where applicable, their spouses, who had inquired about, applied for, and/or rented dwelling units owned or managed by the Lewallens because such a class was too broadly defined. The magistrate found that the Shellhammers could only represent those persons who had been denied occupancy or evicted because they refused to assent to Mr. Lewallen's demands for sexual favors. The magistrate stated that the Shellhammers could not adequately represent those persons who were only constructively evicted because each eviction claim is so unique and is not amenable to class adjudication.
 
 
 11
 Having limited the class to those persons who had been denied occupancy or were evicted because of their refusal to assent to Mr. Lewallen's sexual demands, the magistrate found that such a class did not meet the numerosity requirement of Federal Rule of Civil Procedure 23(a). In support of this finding, the magistrate noted that the evidence available in the case indicated that only twelve members belonged to this class. The magistrate therefore refused to certify a class on this ground.
 
 
 12
 In this appeal, the Shellhammers argue the magistrate erred in two ways. First, they claim he erred in not finding the Lewallens liable under their 'hostile environment theory.' Second, they challenge the magistrate's refusal to certify a class.
 
 
 13
 In arguing that the magistrate erred in rejecting their hostile environment claim, the appellants do not argue that the magistrate made any legal errors. Instead, they simply maintain that they have factually proven their claim. Because the issue is factual, we may only reverse if the magistrate's findings were clearly erroneous. We shall only find the magistrate's conclusions to be clearly erroneous if we are 'left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 14
 In this case, we do not believe an error has clearly been committed. The magistrate simply concluded that the appellees' conduct in this case, when considered in light of the length of the appellants' tenancy, did not create such a hostile environment as to require liability. This was a rational decision that we shall not disturb.
 
 
 15
 With regard to appellant's second claim of error, we understand the appellants' claim to encompass two distinct arguments. First, the appellants are arguing that the district court erred in making a liability determination on the plaintiffs' individual claims before ruling on their motion for class certification. Second, they are asserting that the magistrate erred in finding that they did not meet the numerosity requirement.
 
 
 16
 We do not believe that the magistrate's ruling on the plaintiff's individual claims before deciding the class certification motion requires reversal. In fact, the Supreme Court has referred with approval to this practice. In East Texas Motor Freight v. Rodriguez, 431 U.S. 395, 406 n.12 (1977), the Court stated, '[w]here no class has been certified, . . . and the class claims remain to be tried, the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed at the trial of the plaintiff's individual claims.' (emphasis added). In support of this proposition, the Court cited Cox v. Babcock and Wilcox Co., 471 F.2d 13 (4th Cir. 1972), where the Fourth Circuit affirmed a district court's refusal to certify a class after the putative class representative had failed in his individual claim. Based on this precedent, we find that it was not reversible error for the magistrate to delay ruling on the plaintiffs' motion for class certification until after the plaintiffs' individual claims had been tried.
 
 
 17
 We also find no reversible error in the magistrate's refusal to certify the class because the plaintiffs failed to meet the numerosity requirement. As this Court has stated, 'district courts have broad discretion in deciding whether an action may be maintained as a class action,' Kentucky Educators Public Affairs Council v. Kentucky Registry of Election Finance, 677 F.2d 1125, 1135 (6th Cir. 1982), and we shall only reverse a trial court's class action determination if it abuses that discretion. We shall only find an abuse of discretion if we have a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' Taylor v. United States Parole Commission, 734 F.2d 1152, 1155 (6th Cir. 1984) (quoting McBee v. Bomar, 296 F.2d 235, 237 (6th Cir. 1961)).
 
 
 18
 The magistrate did not abuse his discretion in this case. After determining the scope of defendant's liability on plaintiffs' individual claims, the magistrate quite logically limited the class to those who had been evicted or denied occupancy for refusing to assent to Mr. Lewallen's sexual demands, as had the Shellhammers. Having so limited the class, the magistrate formulated what appears to be a reasonably accurate number of twelve persons who fit within this class. Twelve persons is not such a great number that joinder would be infeasible, as most courts have concluded. See 7 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1762, at 596-97 (1972).
 
 
 19
 The decision of the magistrate is therefore affirmed.