**Albert DiCENSO, Petitioner,**

**v.**

**Henry G. CISNEROS, Secretary of the United States Department of Housing and Urban Development, and Christina L. Brown, Respondents.**

**No. 95–2940.**

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1996.

Decided Sept. 23, 1996.

---

James P. Baker (argued), Springfield, IL, for Petitioner.

Thomas E. Chandler (argued), Jessica Dunsay Silver, Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, Harry L. Carey, Nelson Diaz, Department of Housing and Urban Development, Washington, DC, for Respondent.

Christina L. Brown, Decatur, IL, pro se.

Before BAUER, ESCHBACH, and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

This case raises the question of whether one incident of harassment was sufficiently egregious to create a hostile environment sex discrimination cause of action under the Fair Housing Act, 42 U.S.C. § 3601 et seq. An Administrative Law Judge ("ALJ") thought it was not, but the Housing and Urban Development ("HUD" or "the Department") Secretary's Designee disagreed, and remanded the case to the ALJ for a determination of damages. On remand, the ALJ awarded Christina Brown $5,000 in compensatory damages, assessed a $5,000 civil penalty, and entered injunctive relief. The landlord who committed the harassment now seeks relief from the Secretary's Order. We reverse.

## Background

The events of this lawsuit arose in the context of Christina Brown's tenancy at 522½ West Allen Street in Springfield, Illinois. Brown, who at the time was 18 years old, lived in one of the four apartment units with Thomas Andrews and their infant daughter Sara. Beginning in June 1990, they leased

the apartment from Albert DiCenso, who owned and managed the building, did most of the cleaning and maintenance, and collected the rents.

Brown and Andrews signed a six-month lease with an option for six more months. During the first few months a family friend stayed with them, and their rent was $300 per month. When the friend moved out in September, DiCenso reduced the rent to $275 per month. At first, Brown and her co-tenants delivered the rent checks to DiCenso's home, but eventually, DiCenso started going to the apartment to collect the payments.

Sometime in mid-October or early November, DiCenso came to Brown's apartment to collect the rent. According to the ALJ's findings, the following exchange took place:

> While [Brown] stood at the door, [DiCenso] asked about the rent and simultaneously began caressing her arm and back. He said to her words to the effect that if she could not pay the rent, she could take care of it in other ways. [Brown] slammed the door in his face. [DiCenso] stood outside calling her names—a "bitch" and "whore," and then left.

On January 15, 1991, DiCenso again went to the apartment to collect the monthly rent. While there, he became involved in a confrontation with Andrews and the police were called. DiCenso informed the police that the disagreement was over Andrews' refusal to pay the rent. Brown and Andrews told DiCenso that they would be leaving the apartment within the next ten days. According to the police report, the two parties "both came to the decision of settling the matter in court."

Brown and Andrews did not move out, however, and in late January, DiCenso served them with a five-day notice to quit the premises. On January 31, Brown filed a housing discrimination complaint alleging that DiCenso had harassed her and her boyfriend, and had made sexual advances toward her.[1] DiCenso denied the allegations, and asserted that he had had problems collecting the December 1990 and January 1991 rent, and that Andrews not only refused to pay the rent, but had threatened to hurt him. DiCenso felt that the discrimination complaint was a "plot" by Brown and Andrews to avoid paying the rent that was due.[2]

The Department investigated Brown's complaint and determined that reasonable cause existed to believe that discrimination had occurred. On June 22, 1994 the Department issued a charge against DiCenso for violations of sections 804(b) and 818 of the Fair Housing Act. Section 804(b) prohibits discrimination "against any person in the terms, conditions, or privileges of [the] rental of a dwelling ... because of ... sex." 42 U.S.C. § 3604(b). Section 818 makes it illegal to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right" granted or protected by the Fair Housing Act. 42 U.S.C. § 3617. A HUD ALJ conducted a hearing on October 25, 1994.

On March 20, 1995, the ALJ issued a thorough decision, in which she acknowledged that any finding that the alleged acts occurred rested solely on credibility determinations. In making these determinations, the ALJ relied on the witnesses' demeanor while testifying, their ability and opportunity to observe what happened, their memory, any interest or bias they might have, the consistency of their statements, and the reasonableness of their testimony in light of all of the evidence received. On the whole, the ALJ found Brown more credible than DiCenso. However, the ALJ also found that

---

1. In addition to the aforementioned incident, Brown's complaint alleged other incidents of purported harassment as well as unauthorized entries into the apartment. However, the mid-October exchange is the only incident for which the ALJ found DiCenso responsible. The ALJ heard the evidence, and observed the demeanor and testimony of the witnesses. Moreover, the Secretary's Designee accepted the ALJ's findings of fact. Accordingly, we will consider only the mid-October exchange in determining whether Brown has stated an actionable claim.

2. DiCenso also filed suit against Brown and Andrews in the Circuit Court of Sangamon County to collect the unpaid January 1991 rent. After an evidentiary hearing, the court entered judgment in favor of DiCenso in the sum of $275.00 plus court costs.

Brown's testimony established only one act of sexual harassment by DiCenso—the mid-October incident. On this set of facts, the ALJ concluded that DiCenso's conduct did not rise to the level of severity required to create a hostile housing environment. Consequently, the ALJ found that Brown had failed to establish a claim of sex discrimination and dismissed the complaint.

The Department, acting on Brown's behalf, sought review of the ALJ's order pursuant to 42 U.S.C. § 3612(h). The HUD Secretary's Designee affirmed the ALJ's findings of fact, but reached a different conclusion on the issue of whether the single incident amounted to a hostile housing environment for purposes of the Fair Housing Act. Finding for Brown on the issue of liability, the Secretary's Designee vacated the ALJ's decision and remanded the case for a determination of damages. The ALJ awarded Brown $5,000 in compensatory damages, assessed a $5,000 civil penalty against DiCenso and entered injunctive relief. This award became final on July 19, 1995. On August 18, 1995, DiCenso filed a petition for review in this court pursuant to 42 U.S.C. § 3612(i).

## Analysis

### A. *Standard of Review*

■ Before addressing whether DiCenso's conduct constitutes unlawful discrimination, we first must address the applicable standard of review. Both parties correctly acknowledge that we defer to the ALJ's findings of fact where they are supported by substantial evidence on the record as a whole. *See Chicago Tribune v. NLRB*, 79 F.3d 604, 607 (7th Cir.1996). The issue, then, is whether we also should defer to the Department's legal conclusions. DiCenso understandably argues that we should review the legal conclusions *de novo*. In its initial brief, the Department agreed, but at oral argument, we invited the parties to submit supplemental briefs on the issue of whether the Supreme Court's *Chevron* decision requires us to defer to HUD's interpretation of what constitutes a hostile housing environment. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

■ *Chevron* requires us to defer to the decisions of executive agencies where the agency has a particular expertise in the conflicting policy considerations that underlie a statute, or where the agency previously has considered the matter at issue in a detailed and reasoned fashion. *See id.* at 865, 104 S.Ct. at 2792–93. Neither of these situations exist here. In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court commented on the deference given to EEOC guidelines defining sexual harassment as a form of sex discrimination. Although those guidelines "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," they are not "controlling upon the courts by reason of their authority." *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404, *citing General Electric Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976). In this case, by contrast, HUD has not even enacted guidelines regarding hostile housing environment sex discrimination. Rather, as the HUD Secretary's Designee acknowledged, a determination of what constitutes a hostile environment in the housing context requires the same analysis courts have undertaken in the Title VII context. Such a determination does not require deference to an administrative agency.

■ Despite the concession in its initial brief, the Department now argues that we should subject determinations of whether an incident of harassment is sufficiently egregious to constitute sex discrimination to a clearly erroneous standard. *See, e.g., Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir.1994); *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir.1993); *Rennie v. Dalton*, 3 F.3d 1100, 1106 (7th Cir.1993); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1269–70 (7th Cir.1991). Each of these cases involves claims of hostile environment discrimination in employment. Moreover, all of them also differ from the instant case insofar as they involved challenges to a district court's findings of fact. In those cases, we held that the existence of harassment in a hostile work environment involved an appli-

cation of facts to law. Therefore, the clearly erroneous standard governed. *See Rodgers,* 12 F.3d at 674. In this case, the existence of harassment is not at issue. The sole question is whether the incident of harassment that occurred is sufficient to state a cause of action under the Fair Housing Act. This is purely a question of law which we review *de novo. See Daniels,* 937 F.2d at 1269.

### B. *Hostile Environment Sex Discrimination*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), allows a cause of action for harassment that creates a hostile or offensive working environment. *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2404–05. Claims of hostile environment sex discrimination in the housing context have been far less frequent. The first district court to apply the hostile environment cause of action to housing discrimination did so in *Shellhammer v. Lewallen,* Fair Hous.—Fair Lend. Rep. (P–H) para. 15,742 (W.D.Ohio Nov. 22, 1983), *affirmed by* 1985 WL 13505 (6th Cir. July 31, 1985). Since *Shellhammer,* one court of appeals also has recognized sexual harassment as a basis for a Fair Housing Act discrimination claim. *See Honce v. Vigil,* 1 F.3d 1085 (10th Cir.1993). Like *Shellhammer* and *Honce,* other courts that have found harassment to create an actionable form of housing discrimination also have incorporated Title VII doctrines into their analyses. *See Beliveau v. Caras,* 873 F.Supp. 1393, 1396–97 (C.D.Cal.1995); *see also New York ex rel. Abrams v. Merlino,* 694 F.Supp. 1101 (S.D.N.Y.1988) (alleging a pattern of race and sex discrimination in the provision of real estate brokerage services).

Like the Tenth Circuit, we recognize a hostile housing environment cause of action, and begin our analysis with the more familiar Title VII standard. For sexual harassment to be actionable in the Title VII context, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405–06. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive-is beyond Title VII's

purview." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Applied to the housing context, a claim is actionable "when the offensive behavior unreasonably interferes with use and enjoyment of the premises." *Honce,* 1 F.3d at 1090. Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, and factors may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23, 114 S.Ct. at 371.

We repeatedly have held that isolated and innocuous incidents do not support a finding of sexual harassment. *See, e.g., Koelsch v. Beltone Electronics Corp.,* 46 F.3d 705, 708 (7th Cir.1995); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 444 (7th Cir.1994). For example, in *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526 (7th Cir.1993), the defendant on one occasion put his hand on the plaintiff's leg and kissed her until she pushed him away. Three weeks later, the defendant lurched at the plaintiff from behind some bushes and unsuccessfully tried to grab her. While these incidents were subjectively unpleasant, the defendant's conduct was not frequent or severe enough to create a hostile environment. *Saxton,* 10 F.3d at 534–35. Similarly, in *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333 (7th Cir.1993), the defendant asked the plaintiff for dates on repeated occasions, placed signs which read "I love you" in her work area, and twice attempted to kiss her. These incidents also were too isolated and insufficiently severe to create a hostile work environment. *Weiss,* 990 F.2d at 337. Common to all of these examples is an emphasis on the frequency of the offensive behavior. "Though sporadic behavior, if sufficiently abusive, may support a [discrimination] claim, success often requires repetitive misconduct." *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1345 (7th Cir.1995).

In this context, the problem with Brown's complaint is that although DiCenso may have harassed her, he did so only once. Moreover, DiCenso's conduct, while clearly unwelcome, was much less offensive than other

incidents which have not violated Title VII. DiCenso's comment vaguely invited Brown to exchange sex for rent, and while DiCenso caressed Brown's arm and back, he did not touch an intimate body part, and did not threaten Brown with any physical harm. There is no question that Brown found Di-Censo's remarks to be subjectively unpleasant, but this alone did not create an objectively hostile environment.

We stress in closing that our decision today should not be read as giving landlords one free chance to harass their tenants. We do not condone DiCenso's conduct, nor do we hold that a single incident of harassment never will support an actionable claim. *See Chalmers*, 61 F.3d at 1345; *King v. Board of Regents of University of Wisconsin System*, 898 F.2d 533, 537 (7th Cir.1990). Considering the totality of the circumstances in this case, we agree with the ALJ that DiCenso's conduct was not sufficiently egregious to create an objectively hostile housing environment.

**Conclusion**

For the foregoing reasons, we grant Di-Censo's petition and reverse the decision of the HUD Secretary Designee.

REVERSED.

FLAUM, Circuit Judge, dissenting.

The majority correctly notes that this case raises the purely legal issue of whether a particular incident of harassment was sufficiently egregious to create a hostile housing environment claim under the Fair Housing Act (the "FHA"). The majority reviews this legal issue *de novo* and concludes that Albert DiCenso's conduct did not create an objectively hostile environment. Because, in my view, we must defer to HUD's reasonable interpretation of what constitutes a hostile housing environment, I respectfully dissent from the majority's decision.

It is well-established that considerable weight should be given to an agency's construction of a statutory scheme that it has been entrusted to administer. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984). The Supreme Court has held that HUD's inter-

pretation of the FHA "ordinarily commands considerable deference" since "HUD [is] the federal agency primarily assigned to implement and administer Title VIII." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 107, 99 S.Ct. 1601, 1611-12, 60 L.Ed.2d 66 (1979); *see Pfaff v. United States Dep't of Housing & Urban Dev.*, 88 F.3d 739, 747 (9th Cir.1996); *Cowherd v. United States Dep't of Housing & Urban Dev.*, 827 F.2d 40, 42 (7th Cir.1987) (finding that Congress vested HUD "with considerable discretion to implement the various and often competing goals of the national housing policy"). The majority recognizes that *Chevron* calls for deference where an agency has expertise in reconciling conflicting policy considerations that underlie a statute, but posits that, because HUD has not enacted hostile housing environment guidelines, we need not defer to HUD's construction of the FHA. Yet an agency is free to formulate policy through individual adjudicative proceedings rather than rulemaking. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 293-94, 94 S.Ct. 1757, 1771-72, 40 L.Ed.2d 134 (1974). Thus an agency's interpretation of the statute that it administers commands deference, irrespective of whether that interpretation emerges as a result of an adjudicative proceeding or a rulemaking process. *Pfaff*, 88 F.3d at 747; *see Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 574, 108 S.Ct. 1392, 1396-97, 99 L.Ed.2d 645 (1988) (applying *Chevron* deference in the context of an adjudicative proceeding); *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31-32, 102 S.Ct. 38, 41-42, 70 L.Ed.2d 23 (1981) (finding that interpretation developed by agency during adjudication was entitled to deference). The scope of our review of this agency action is therefore clearly limited. We "may not substitute [our] own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782.

In the current case, the Secretary of HUD has taken the position that DiCenso's conduct was sufficiently severe as to create a claim for hostile housing environment under the FHA. Section 804(b) of the FHA prohibits gender-based discrimination in the sale or

rental of a dwelling, or in the "provision of services" in connection with such sale or rental. 42 U.S.C. § 3604(b). The Secretary, consistently with the approach adopted by the majority, believes that a hostile housing environment claim is actionable "when the offensive behavior unreasonably interferes with use and enjoyment of the premises." *Honce v. Vigil,* 1 F.3d 1085, 1090 (10th Cir. 1993). The Secretary concludes that DiCenso's offensive conduct was sufficiently severe to satisfy this test, despite the fact that the conduct only occurred once. DiCenso's unwelcome caressing of Brown, combined with his offer of "sex for rent" and his hurling of gender-oriented epithets after Brown's rejection of his offer, certainly provides the Secretary with ample support for this conclusion. Although the majority may very well be correct in stating that DiCenso's conduct would not be sufficient to give rise to a claim for sexual harassment under our Title VII precedent, the majority provides no basis for doubting the reasonableness of the Secretary's interpretation of the FHA. In conclusion it is my judgment that the Secretary's interpretation of the FHA is a reasonable one and is therefore entitled to deference.