Vickie BECKER, Plaintiff,

v.

UNITED METHODIST YOUTHVILLE,
INC., Defendant.

No. 96–4194–RDR.

United States District Court,
D. Kansas.

Oct. 16, 1998.

Larry J. Leatherman, Palmer & Lowry, Topeka, KS, for Vickie Becker, Plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for United Methodist Youthville, Inc., Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff alleges that her rights against sex discrimination in employment were violated by a hostile working environment. This case is now before the court upon a long-pending motion for summary judgment brought on behalf of defendant. There appears to be some difference between the claims which plaintiff was raising at the time of the summary judgment motion and the claims plaintiff is advancing in the final pretrial order, which was filed after the summary judgment motion. Pursuant to FED.R.CIV.P. 16(e), the court shall limit plaintiff's claims to what is stated in the final pretrial order, i.e., a hostile work environment claim under Title VII. Therefore, in this order the court shall only discuss whether summary judgment should be granted against that claim.

*Summary judgment standards*

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and*

*the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

*Factual background*

Reading the record in a light most favorable to plaintiff, the court's decision is based upon the following facts which the court accepts solely for the purposes of the instant motion. Defendant is an organization which provides custodial care for children. Plaintiff was employed as a youth care worker by defendant at its Dodge City, Kansas campus. She reported to Sam Hayden, a unit leader. Hayden reported to Glenda Patterson, who was in charge of the building where plaintiff and Hayden worked. During the relevant time period of this case, defendant had a policy prohibiting sexual harassment which was part of its personnel policy manual.

Plaintiff began her employment on May 20, 1994. She resigned effective April 18, 1996. Plaintiff resigned after an incident of sexual harassment which occurred during the early morning hours of March 7, 1996 in a hotel in Topeka, Kansas. Five employees of defendant, including the plaintiff, drove to Topeka on March 6, 1996 to attend a seminar at Stormont Vail Hospital. The seminar started the following day, Thursday, March 7, 1996 and ended on Friday, March 8, 1996. The other employees on the trip were: Mike Hoar, the director of the Dodge City campus; Kent Noble, the clinical director of the campus; Sam Hayden, plaintiff's supervisor and unit leader; and Karen Koontz, a co-worker of plaintiff. All of the employees stayed at the same hotel. Plaintiff and Koontz shared a room.

On the night of March 6, 1996, the five employees ate dinner at a restaurant and then returned to the hotel. They decided to go to a strip joint. Plaintiff reluctantly agreed to go, perhaps because they needed a designated driver. She thought they were going to a bar, not a strip joint. But, she did not insist on leaving after arriving at the establishment. They stayed until closing time. Then, plaintiff drove the group back to the hotel.

Sam Hayden was drunk. Hayden is 6'5" and weighs 235 pounds. He and the others were in the hotel room of plaintiff and Koontz. Koontz and Hoar left to sit in the hotel hot tub. Noble went to his room and was not seen until the following morning. Hence, plaintiff was left in the room alone with Hayden.

Hayden asked to talk with plaintiff, but then attempted to put his arms around plaintiff and kiss her. She told him to stop because she was married. He stopped but asked if he could kiss her. Plaintiff said no and then, at Hayden's request, walked him to his room, where Kent Noble was also staying.

Plaintiff returned to her room. Hayden came back and entered plaintiff's room. Again, he tried to hug and kiss plaintiff. She told him "no" and pushed him away. Hayden asked plaintiff to lay on the bed with him. She refused. Once more she walked

Hayden back to his room at Hayden's request.

Plaintiff came back to her room. When there was a knock at her door, she opened it and saw a hotel employee with Hayden. The hotel employee wanted to know where Hayden's room was. Hayden wanted to talk with plaintiff. The hotel employee offered to do something if Hayden was making a disturbance. However, plaintiff wanted to avoid making a scene and allowed Hayden into her room. Hayden tried to make advances again and then passed out on one of the beds in plaintiff's room. Eventually, Koontz returned to the room from the hot tub. At some point, Hayden awoke or was awakened and left the room.

The next morning at the van as they were preparing to go to the seminar, Hayden told plaintiff, "I think I owe you an apology." He told plaintiff he was sorry for whatever he did and that he didn't remember most of it. He attempted to apologize again during the trip back to Dodge City. Plaintiff did not want to talk about it and at one point remarked that it wasn't a big deal.

On the first business day following their return to Dodge City, plaintiff and Hayden reported the hotel incident to Hayden's supervisor, Glenda Patterson. Hayden offered to quit. This offer was not accepted. Hayden was directed to follow the instructions of plaintiff's therapist, although this mandate may not have been communicated to the therapist. Hayden was told to write formal apologies to plaintiff and Koontz. He did. Hayden was told he was no longer plaintiff's supervisor, although this was not told to plaintiff or other employees.[1] It was recommended that Hayden seek an alcohol assessment. Hayden felt this was required and did so. A "final warning" was placed in Hayden's personnel file. Hayden was also required to meet with his supervisor periodically concerning alcohol abuse.

Plaintiff was given a leave of absence. Defendant offered to pay for whatever counseling plaintiff needed. After plaintiff returned to work, Glenda Patterson checked with her periodically and offered to help her. Plaintiff reported being angry with Hayden. Plaintiff saw Hayden daily at work but had virtually no interaction with him. However, just seeing him upset plaintiff. Plaintiff delivered her letter of resignation to Hayden's mailbox at work. When the resignation was processed, plaintiff told Patterson that she resigned because Hayden was still there and that there were problems at home because of the hotel incident. In essence, plaintiff did not feel she could work for defendant with Hayden there.[2]

*Arguments for summary judgment*

Defendant contends that plaintiff cannot prevail upon a claim of a hostile work environment. After the instant motion for summary judgment was filed, the Supreme Court, in two cases decided the same day, articulated a standard for an employer's vicarious liability for a hostile work environment:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed.Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

---

**1.** Plaintiff testified that when she turned in her resignation, defendant offered to transfer Hayden so that he would not be her supervisor. She appears to deny that this happened in a post-deposition affidavit.

**2.** Initially, plaintiff told Patterson that she did not want Hayden fired because he was good with the kids. At the time of plaintiff's resignation, she said that she did not want to be transferred and that it would not help to have Hayden transferred to another position on the Dodge City campus. In her deposition, plaintiff admits that "basically" at the time of her resignation, defendant would have to fire Hayden for plaintiff to have continued working there.

*Faragher v. City of Boca Raton,* —— U.S. ——, —— – ——, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998).

■ For there to be "an actionable hostile environment," there must be a sexually objectionable environment, both subjectively and objectively. In other words, the victim must find it hostile or abusive and a reasonable person must find it so. *Faragher,* —— U.S. at ——, 118 S.Ct. at 2283 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "[C]ourts ... determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.,* (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). Under this approach, a single act can create a hostile environment if it is sufficiently severe. *DiCenso v. Cisneros,* 96 F.3d 1004, 1008–09 (7th Cir.1996); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir.1995).

■ Defendant concedes the subjective component of the test. See p. 20 of reply brief in support of summary judgment. In defendant's initial brief, it appears to the court that defendant does not challenge the objective part of the test either. See p. 27 of brief in support of summary judgment. However, in defendant's reply brief, defendant emphatically declares that it is not conceding this point. Even permitting defendant to raise this defense in its reply brief, the court is convinced that the record does not support summary judgment. This case involves a situation of physical harassment which may be akin to sexual assault. Upon the record before the court it is unclear exactly what was involved in the attempted kisses, hugs, passes and advances. Accordingly, the court concludes that summary judgment cannot be granted upon the grounds that there is insufficient proof of an actionable hostile environment.

For there to be vicarious liability the hostile environment must be created by a supervisor. There may be some dispute as to whether Hayden was plaintiff's supervisor. But, there is certainly enough evidence of a supervisory status to allow this issue to go to trial.

■ Finally, the Supreme Court has recognized an affirmative defense with two necessary elements. Most of the material presented in the summary judgment motion has application to the first element, i.e., whether the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior. But, even if this was done, to escape liability defendant must still prove the second element, i.e., that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. See *Burlington Industries,* —— U.S. at ——, 118 S.Ct. at 2274 (Thomas, J., dissenting) (under majority opinion, employers will be liable "notwithstanding the affirmative defense, *even though they acted reasonably,* so long as the plaintiff in question fulfilled *her* duty of reasonable care to avoid harm."); see also, *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1261 (10th Cir. 1998) (an employer whose supervisory personnel has harassed subordinates will be liable for the harassment that occurred even though the employer stopped further harassment).

The court believes there is a material issue of fact as to whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

Accordingly, defendant's motion for summary judgment shall be denied.

**IT IS SO ORDERED.**