[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12620

_____

D.C. Docket No. 9:19-cv-81620-AHS

RITA FOX,

Plaintiff - Appellant,

versus

LUCILLE F. GAINES,
DANA JAMES GAINES,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 16, 2021)

Before JILL PRYOR, NEWSOM and MARCUS, Circuit Judges.

JILL PRYOR, Circuit Judge:

This case presents the question of whether sexual harassment claims are actionable under the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. § 3601 *et seq.* After being forced out of her rented apartment for ending a sexual relationship with the property manager, Rita Fox sued the property manager and the property's owner, asserting sexual harassment claims under the FHA and the Florida Fair Housing Act ("Florida FHA"), Fla. Stat. § 760.20 *et seq.* Finding no guidance from this Court on the question, the district court dismissed Ms. Fox's complaint on the ground that her sexual harassment claims were not actionable under the FHA. Today we provide that guidance and hold that sexual harassment can be a form of sex discrimination prohibited by the FHA, provided the plaintiff can demonstrate that she would not have been harassed but for her sex. We thus vacate the district court's order dismissing Ms. Fox's complaint and remand for the court to reconsider her complaint in light of our decision.

## I.    BACKGROUND

### A. Factual Background[1]

Ms. Fox, a single mother facing foreclosure eviction, visited the Rose Bush Apartments in Jupiter, Florida, to view an apartment available for rent. Lucille

---

[1] The facts recited here are taken from Ms. Fox's second amended complaint. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1218 n.2 (11th Cir. 2016) ("At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to the [non-movant].").

Gaines owned the Rose Bush Apartments and employed Dana Gaines as the property manager.[2]

When Ms. Fox went to apply for the unit, Mr. Gaines "commented on [her] looks, which made [her] feel uncomfortable." Doc. 39 at 5.[3] Mr. Gaines told Ms. Fox that he had a list of people interested in the unit but would "keep [it] available for her if she would give him a kiss." *Id.* at 6. Mr. Gaines's comment gave Ms. Fox "slight reservations" about renting the unit, but because the apartment met her needs, she signed a lease. *Id.* When Ms. Fox met Mr. Gaines to receive the keys to the apartment, he "reminded her about the kiss," and Ms. Fox kissed him. *Id.*

Upon moving into the apartment, Ms. Fox paid the first month's rent, last month's rent, and a security deposit, but she soon found it difficult to make her full monthly rent payment. Mr. Gaines offered to help Ms. Fox with her rent if she would "help him" by providing him sexual favors. *Id.* at 7. Ms. Fox "eventually acquiesced," and for about three and a half years Mr. Gaines reduced her monthly rent in exchange for sexual favors. *Id.* Ms. Fox alleges that this arrangement was part of a "pervasive and persistent pattern of sexual harassment and discrimination." *Id.* at 6. On top of the sexual favors, Mr. Gaines would question Ms. Fox about her whereabouts and demand that she not invite male visitors to her

---

[2] The complaint does not reveal whether Dana and Lucille Gaines are related, but it makes no difference for purposes of this appeal.

[3] "Doc." numbers refer to the district court's docket entries.

apartment. He also installed surveillance cameras facing Ms. Fox's unit and "monitored [her] daily activity." *Id.* at 7.

Hoping to stop Mr. Gaines's "controlling and harassing behavior," Ms. Fox ended her sexual relationship with him. *Id.* In response, Mr. Gaines started serving Ms. Fox with "fraudulent violation notices" and threatened to evict her from her apartment. *Id.* at 8. About a week after Ms. Fox ended the relationship, she paid a portion of her monthly rent, as she had for the past three and a half years, and made an oral agreement with Mr. Gaines that she would pay the remainder within eight days. Eight days later, Ms. Fox paid the remainder of her rent, but Mr. Gaines told her that because she had failed to pay within *seven* days, he had "no choice but to file an eviction on [her]." Doc. 39-7 at 1. He served her with a three-day notice to vacate the apartment for failure to pay rent, even though she owed no rent.

When Ms. Fox failed to move out within three days, Mr. Gaines initiated formal eviction proceedings against her. The day after he filed the complaint for eviction, he and Ms. Fox agreed that she would move out by midnight on the last day of the month. On the last day of the month, he called the police and tried to have her arrested for trespassing. She had to explain to the officers that she retained possession of the unit until midnight. As promised, Ms. Fox moved out of her apartment that day.

## B. Procedural Background

After being forced out of her apartment by Mr. Gaines, Ms. Fox sued him and Ms. Gaines, arguing that Mr. Gaines's sexual harassment of her violated the FHA's and Florida FHA's prohibitions on sex discrimination.[4] Mr. Gaines and Ms. Gaines filed separate motions to dismiss Ms. Fox's complaint, which the district court granted. Even though the district court agreed that Ms. Fox had "sufficiently pled 'severe, pervasive harassment'" that was "well beyond what [was] required to withstand a motion to dismiss," the court decided that Ms. Fox's sexual harassment claim was not actionable under the FHA. Doc. 51 at 4–5. The court acknowledged that its holding was in direct contrast with "the overwhelming weight of federal authority" but nevertheless concluded that the plain language of the FHA did not provide a cause of action for sexual harassment. *Id.* at 6 (quoting *Noah v. Assor*, 379 F. Supp. 3d 1284, 1288 (S.D. Fla. 2019)).

This is Ms. Fox's appeal.

---

[4] Ms. Fox alleged that Mr. Gaines and Ms. Gaines violated three provisions of the FHA: (1) § 3604(b), which bars sex discrimination, among other class-based discrimination, in the terms and conditions of rental housing; (2) § 3604(c), which bars making, printing, or publishing discriminatory notices or statements based on sex, among other protected classes, with respect to the sale or rental of housing; and (3) § 3617, which prohibits interference, coercion, or intimidation with the exercise of fair housing rights granted in § 3604. Ms. Fox's allegations under the Florida FHA were essentially identical to those under the FHA. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) ("The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each.").

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order granting a motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff.  *Ga. State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 631 (11th Cir. 2019).  We also review *de novo* a district court's interpretation of a statute.  *Id.*

## III.    DISCUSSION

Whether sexual harassment qualifies as sex discrimination under the FHA is a question of first impression in our circuit.  *See Tagliaferri v. Winter Park Hous. Auth.*, 486 F. App'x 771, 774 (11th Cir. 2012) (unpublished) (declining to decide whether sexual harassment is actionable under the FHA).  Today we join our sister circuits in concluding that it does.[5]  *See United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) ("Sexual harassment is actionable under the FHA when it creates a

---

[5] Every circuit court to have addressed this question has held that sexual harassment is actionable under the FHA.  The Gaineses do not disagree, as their counsel repeatedly confirmed at oral argument.  *See* Oral Argument at 18:09–28 ("I think that if the harassment rises to a particular level and it's based on one of the protected statuses that it could conceivably fall into the category of discrimination.  And I think that there are cases that talk about sexual harassment being sex discrimination if the animus is sex."); *id.* at 30:48–31:17 ("[T]he FHA is clear.  I think that if harassment is motivated by an animus of sex or another protected status that it would constitute sex discrimination. . . .  Sexual harassment in my opinion is no different than any other conduct that is prohibited.  If it's motivated because of an animus against a protected status, it falls within the parameters of the FHA."); *id.* at 31:17–58 (confirming Judge Newsom's statement that the parties agree sexual harassment is actionable under the FHA if the but-for cause of the harassment is sex).

hostile housing environment or constitutes quid pro quo sexual harassment."[6] (internal quotation marks omitted)); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008–09 (7th Cir. 1996) (recognizing that sexual harassment is an actionable sex discrimination claim under the FHA); *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir. 1993) (same); *see also Hall v. Meadowood Ltd. P'ship*, 7 F. App'x 687, 689 (9th Cir. 2001) (unpublished).

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex."  42 U.S.C. § 3604(b).  The Supreme Court has held that the words "because of" and "based on" indicate "but-for causality."  *Burrage v. United States*, 571 U.S. 204, 213 (2014).  So, by its plain meaning, the FHA protects a tenant or prospective homebuyer from receiving differential or less favorable treatment in housing terms, conditions, or privileges if the but-for cause of that treatment is her sex.

---

[6] A defendant creates a hostile housing environment by subjecting the plaintiff "to unwelcome sexual harassment" that was "sufficiently severe or pervasive so as to interfere with or deprive [the plaintiff] of her right to use or enjoy her home."  *Quigley v. Winter*, 598 F.3d 938, 946–47 (8th Cir. 2010).  Quid pro quo sexual harassment occurs when housing benefits are explicitly or implicitly conditioned on sexual favors.  *Id.* at 947.

7

When interpreting the FHA, we—like our sister circuits—look to cases interpreting Title VII, which uses language virtually identical to the FHA's.[7] *See, e.g.*, *DiCenso*, 96 F.3d at 1008; *Honce*, 1 F.3d at 1088; *see also Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000) ("Courts have recognized that [the FHA] is the functional equivalent of Title VII . . . so the provisions of these two statutes are given like construction and application."). Turning to cases interpreting Title VII confirms our conclusion that the FHA prohibits sexual harassment.

Interpreting Title VII, the Supreme Court ruled that "[w]ithout question" sexual harassment is a form of sex discrimination within the meaning of Title VII's nearly identical prohibition on "discriminat[ion] . . . because of . . . sex." *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 63–67 (1986) (quoting 42 U.S.C. § 2000e-2(a)(1)); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998) ("Title VII prohibits 'discriminat[ion] . . . because of . . . sex'" which includes "sexual harassment of any kind that meets the statutory requirements."). In *Meritor* the Court relied on the reasoning of our decision in *Henson v. City of Dundee*, where we held that "a hostile or offensive atmosphere created by sexual harassment can, standing alone, constitute a violation of Title VII," explaining that

---

[7] Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).

8

a "pattern of sexual harassment inflicted upon an employee because of her sex is a pattern of behavior that inflicts disparate treatment upon a member of one sex with respect to terms, conditions, or privileges of employment." 682 F.2d 897, 902 (11th Cir. 1982); *see Meritor*, 477 U.S. at 66–67. Following *Meritor* and *Henson*, we have consistently held that sexual harassment constitutes impermissible sex discrimination under Title VII where, but for the fact of the claimant's sex, she would not have been the object of harassment. *See, e.g.*, *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244–45, 1248 n.5 (1999) (en banc); *Fleming v. Boeing Co.*, 120 F.3d 242, 244 (11th Cir. 1997) ("Two types of sexual harassment are prohibited by Title VII: quid pro quo harassment and hostile work environment harassment." (emphasis omitted)). As these Title VII cases make clear, the plain text of "discriminat[ion] . . . because of . . . sex," 42 U.S.C. § 3604(b), includes sexual harassment where the plaintiff proves that, but for her sex, she would not have been subjected to sexual harassment.

Thus, we hold that sexual harassment—both hostile housing environment and quid pro quo sexual harassment—is actionable under the FHA, provided the plaintiff demonstrates that she would not have been harassed but for her sex.[8]

---

[8] We note further that interpreting the FHA's prohibition on sex discrimination to include sexual harassment is consistent with the FHA's "broad remedial purpose." *Ga. State Conf.*, 940 F.3d at 631 (internal quotation marks omitted); *see also Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) ("The language of the [FHA] is broad and inclusive.").

Because the district court erroneously concluded otherwise, we vacate the district court's order granting the Gaineses' motions to dismiss and remand with instructions to the district court to consider, in light of our ruling, whether Ms. Fox's complaint adequately alleged violations of the FHA.[9]

## IV.    CONCLUSION

For the foregoing reasons, we vacate the district court's order granting the motions to dismiss Ms. Fox's complaint and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[9] We acknowledge Ms. Fox's argument on appeal that her second amended complaint adequately alleged violations of the FHA's prohibition on sexual harassment. We believe, however, that the district court is best suited to address this question in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the court of appeals, to be exercised on the facts of individual cases.").