[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10053
_____

D.C. Docket No. 3:17-cv-00067-TCB

GEORGIA STATE CONFERENCE OF THE NAACP,
TROUP COUNTY NAACP,
PROJECT SOUTH,
CHARLES BREWER,
CALVIN MORLAND,
APRIL WALTON,
PAMELA WILLIAMS,
JOHN DOE, #1,
JOHN DOE, #2,
JOHN DOE, #3,

Plaintiffs-Appellants,

versus

CITY OF LAGRANGE, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 10, 2019)

Before WILSON and BRANCH, Circuit Judges, and VINSON,* District Judge.

BRANCH, Circuit Judge:

This appeal requires us to decide whether § 3604(b) of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.—which prohibits discrimination on the basis of "race, color, religion, sex, familial status, or national origin" in connection with the "sale or rental of a dwelling, or in the provision of services or facilities in connection therewith"—applies to any conduct that occurs after an individual has acquired housing. The plaintiffs filed a civil complaint in the United States District Court for the Northern District of Georgia challenging two policies related to the provision of basic utility services from the City of LaGrange, Georgia—the sole utility provider—on the ground that the policies have a disproportionate, discriminatory impact on black and Hispanic residents, in violation of § 3604(b) of the FHA. The district court dismissed the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that § 3604(b) does not apply to discriminatory conduct that occurs after a person has acquired housing (i.e., post-acquisition conduct). For the following reasons, we vacate and remand for further proceedings.

## I.    Background

The municipal government of the City of LaGrange, Georgia ("the City"), is the sole provider of electricity, gas, and water utility services in LaGrange. The

2

City requires that utility customers comply with two policies in order to initiate and maintain those basic utility services. First, both applicants and current utility customers must pay any debts they owe to the City, including court judgments and fines ("the court debt policy"). Thus, an applicant may not obtain utility services without first satisfying outstanding municipal debts, and current utility customers who owe an unpaid debt to the City may have their utility services terminated without advance notice. Second, the City requires an applicant seeking to open a new utility account to present valid state- or federally-issued photo identification, and at the time relevant to this litigation, required the applicant to provide a valid Social Security number[1] ("the identification policy").

In 2017, three association plaintiffs (Georgia State Conference of the National Association for the Advancement of Colored People, Troup County Chapter of the National Association for the Advancement of Colored People, and Project South), along with seven individual plaintiffs (Charles Brewer, Calvin Moreland, April Walton, Pamela Williams, John Doe 1, John Doe 2, and John Doe 3), filed the underlying complaint against the City. Specifically, the plaintiffs argued that the court debt policy disproportionately harms black residents because

---

[1] Counsel for the City stated at oral argument that the City no longer requires an applicant for a utility account to provide a Social Security number but concedes that the policy remains at issue for purposes of this litigation.

3

they are more likely to have outstanding municipal court debt.  They asserted that the identification policy disproportionately harms hispanic residents, as they are more likely to lack the required identification documents for opening a utility account.[2]

The City moved to dismiss the complaint under Rule 12(b)(6), arguing, as relevant to this appeal, that § 3604(b) of the FHA does not reach conduct that occurs after an individual has acquired housing.  The district court agreed, concluding that the statute's applicability is limited to discrimination in the provision of services in connection with the acquisition of a dwelling, and, therefore, does not apply to discrimination in the provision of services after a person acquires housing.  Accordingly, the district court dismissed the complaint with prejudice.  This appeal followed.

## II.    Standards of Review

"'We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.'"  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) (quoting *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008)).  "We also

---

[2] The complaint also contained two state law claims not at issue in this appeal.

review *de novo* a district court's interpretation of a statute." *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 585-86 (11th Cir. 2015).

### III.    Discussion

#### A. Whether § 3604(b) reaches post-acquisition conduct

The sole issue in this case is one of statutory interpretation, and so we begin with the text itself. *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("The starting point for all statutory interpretation is the language of the statute itself."). "We do not look at one word or term in isolation, but instead look to the entire statutory context." *Id.* Further, where the language of the statute is unambiguous, we need look no further and our inquiry ends. *Id.*

On its face, the statute is unambiguous. It prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The City argues that the phrase "in connection therewith" refers to "the sale or rental of a dwelling," such that § 3604(b)'s reach is limited only to discriminatory conduct that takes place prior to or at the moment of the sale or rental. Such a narrow reading, however, is not supported by the plain language of the statute.

Rather, as we recently explained, "the language of the FHA is broad and inclusive," "prohibits a wide range of conduct," "has a broad remedial purpose,"

5

and "is written in decidedly far-reaching terms."  *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260, 1278 (11th Cir. 2019) (quotations and punctuation omitted); *see also Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) ("The language of the [FHA] is broad and inclusive.").  The statute does not contain any language limiting its application to discriminatory conduct that occurs prior to or at the moment of the sale or rental.  To ascribe to the statute the limited applicability the City urges, we would have to read an otherwise absent temporal limitation into the language of the statute, which we cannot do.  *See, e.g.*, *Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible to improvement."); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (*en banc*) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it."); *see also United States v. Evans*, 478 F.3d 1332, 1339 (11th Cir. 2007) (declining to read a temporal limitation into a criminal statute where the plain language did not suggest such a limitation).  Thus, because there is no temporally limiting language, the plain language of § 3604(b) may, under certain circumstances, encompass the claim of a current owner or renter for discriminatory conduct related to the provision of services, as long as those services have a connection to the sale or rental of the dwelling.  Indeed, this interpretation is

6

consistent with our decision in *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1263-65 (11th Cir. 2002), in which we held that the evidence was sufficient to support a jury verdict in favor of the plaintiff's claim that the defendants violated § 3604(b) when they evicted her based on familial status.  In so holding, we did not make any distinction based on the fact that the plaintiff's claim arose from post-acquisition conduct. *Id.*

We are not alone in our conclusion that § 3604(b) can reach post-acquisition conduct.  Several of our sister circuits have recognized that § 3604(b) may, under certain circumstances, apply to claims of discrimination that arise from post-acquisition conduct. *See Bloch v. Frischholz*, 587 F.3d 771, 779-81 (7th Cir. 2009) (reversing a grant of summary judgment in favor of a condominium association, and concluding that condominium owners could sue the association under § 3604(b) for alleged discrimination that took place after they bought their unit); *Comm. Concerning Cmty. Improvement ("CCCI") v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009) ("We conclude that [§ 3604(b)] reaches post-acquisition discrimination."); *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 740, 746 (5th Cir. 2005) (concluding that § 3604(b) did not apply to a claim that a city violated this statute by failing to prevent dumping at an illegal site because such conduct was not connected to the sale or rental of a dwelling, but noting in dicta that "[t]his is not to say that § 3604(b) applies only if the plaintiff was precluded

7

from finding housing. [Rather,] § 3604(b) may encompass the claim of a current owner or renter for attempted and unsuccessful discrimination relating to the initial sale or rental or for actual or constructive eviction."); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) (holding that a landlord who threatened to evict tenants if they continued to receive black guests violated "the express terms" of § 3604(b)). Accordingly, we conclude that § 3604(b) is unambiguous and reaches certain post-acquisition conduct, including post-acquisition conduct related to the provision of services, as long as those services are connected to the sale or rental of a dwelling.[3]

B.  What services fall within the scope of § 3604(b)

Having concluded that some post-acquisition conduct falls within the scope of § 3604(b), we must decide whether § 3604(b) applies to the specific post-acquisition services at issue here: municipally provided electricity, gas, and water services.

To be clear, not all housing-related services necessarily fall within the scope of § 3604(b). Rather, as noted by the D.C. Circuit, to extend the Fair Housing Act to any and every municipal policy or service that touches the lives of residents

---

[3] Because § 3604(b) is unambiguous, we do not consider the interpretations of § 3604(b) by federal agencies advanced by the plaintiffs. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  Likewise, because § 3604(b) is clear and unambiguous, we find it is unnecessary to consider interpretations of similar language in § 3604(f)(2).

"would be to expand that Act into a civil rights statute of general applicability rather than one dealing with the specific problems of fair housing opportunities." *See Clifton Terrace Assocs., Ltd. v. United Tech. Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991) (quoting *Vercher v. Harrisburg Hous. Auth.*, 454 F. Supp. 423, 424 (M.D. Pa. 1978)).

Other circuits that have considered § 3604(b) challenges involving services provided by local governments have focused on whether said services have a sufficient nexus to housing. For example, while recognizing that § 3604(b) may encompass certain post-acquisition conduct related to housing, the Fifth Circuit held that § 3604(b) did not apply to claims that a city discriminated in the enforcement of zoning laws to prevent unlawful dumping near the plaintiffs' residences "because the service was not 'connected' to the sale or rental of a dwelling as the statute requires." *Cox*, 430 F.3d at 745. Similarly, the Fourth Circuit held that a group of residents could not challenge the city's decision to locate a highway near their property under § 3604(b), because such a decision did not "implicate 'the terms, conditions, or privileges of sale or rental of a dwelling, or . . . the provision of services or facilities in connection therewith.'" *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 193 (4th Cir. 1999). In reaching this decision, the Fourth Circuit rejected the plaintiffs' contentions that the bypass was "a housing 'service'" within the meaning of § 3604(b), noting that

9

"[t]he [FHA's] services provision simply requires that such things as garbage collection and other services of the kind usually provided by municipalities not be denied on a discriminatory basis." *Id.* (quotations omitted).  By contrast, in *CCCI*, the Ninth Circuit took a more expansive view of the meaning of "services" under § 3604(b), holding that the "timely provision of law-enforcement personnel," fell within the scope of § 3604(b).  583 F.3d at 714-15.

Because the text of § 3604(b) makes clear that the conduct at issue must relate to services provided in connection with the sale or rental of a dwelling, we find the Ninth Circuit's expansive view of services covered by § 3604(b) unpersuasive.  Law enforcement services are not provided in connection with the "sale or rental of a dwelling."  Indeed, those services are provided regardless of whether an individual has housing and are not required in order to obtain housing.  Rather, we find the narrower view of "services" articulated by the Fifth and Fourth Circuit persuasive and consistent with the plain language of § 3604(b).  Accordingly, we hold that a service within the meaning of § 3604(b) must be a housing-related service that is directly connected to the sale or rental of a dwelling.

C. Whether the particular municipal services in this case fall within the scope of § 3604(b)

The basic utility services at issue here—water, gas, and electricity—are distinct from other municipal services in two critical ways, both of which demonstrate their direct connection to the sale or rental of a dwelling: (1) they are

10

services closely tied to the sale or rental of a dwelling, and (2) they are essential to the habitability of a dwelling.  As explained further, these two distinctions support our conclusion that the water, gas, and electricity services at issue here fall within the scope of § 3604(b).

First, basic utility services have an undeniably closer connection to the sale or rental of a dwelling than the generally provided municipal services at issue in *Cox* and *Jefferson Heights*.  Specifically, it is common knowledge that in connection with buying or leasing a dwelling, a resident must obtain basic utility services, such as water, gas, and electricity for the home.  Moreover, in the context of housing, a person cannot obtain such services without first obtaining a dwelling.  In other words, these basic utility services are inextricably intertwined with the dwelling itself.  Indeed, it is practically impossible when considering housing to separate the "sale or rental of a dwelling" from the concept of obtaining basic utility services.  Thus, the provision of these attendant services is clearly, directly connected to the sale or rental of a dwelling.

Second, these basic utility services are connected to the sale or rental of a dwelling because they are fundamental to the ability to inhabit a dwelling.  *See, e.g.*, *Bloch*, 587 F.3d at 779 (explaining that the "right to inhabit the premises is a 'privilege of sale [or rental]" and "[d]eprivation of that right by making the premises uninhabitable violates § 3604(b)"); *see also Black's Law Dictionary* 826

11

(10th ed. 2014) (defining "habitability" as "[t]he condition of a building in which inhabitants can live free of serious defects that might harm health and safety" and "habitable" as "good enough for people to live in; providing a minimal level of safety and comfort so as to make for passable living conditions").

In this case, the City is the sole provider of the basic utility services of water, gas, and electricity.[4]  And, accepting the complaint's allegations as true, as we must at this stage, *Renfroe*, 822 F.3d at 1243, some of the plaintiffs are unable to open utility accounts because they lack the required identification or have outstanding municipal court debt.  Similarly, other plaintiffs who have utility services but have acquired municipal debt are at risk of having those services terminated without notice.  As a result, even if the plaintiffs are able to purchase or rent a dwelling, they are unable to live in it due to being unable to obtain or maintain basic utility services.  Therefore, we conclude that because the water, gas, and electricity services at issue in this case are essential to the habitability of a dwelling and closely connected with the sale or rental of housing, they unambiguously fall within the scope of § 3604(b).

---

[4]  We offer no opinion as to whether the presence of another utility provider in the service area would affect the analysis.

D. Whether § 3604(b) applies to the City in this case

Finally, the City argues that because it is not a housing provider, but instead is a third-party provider of services and "a stranger to each individual Plaintiff's sale or rental transaction," it cannot be subject to liability under § 3604(b). While it is true that the majority of cases under § 3604(b) involve providers of housing who are also responsible for the services associated with the dwelling, the text of § 3604(b) does not limit its applicability in such a manner and our case law has never held that only housing providers are subject to liability thereunder.

## IV.    Conclusion

Our opinion is limited solely to the determinations that § 3604(b) encompasses some post-acquisition conduct and that the basic utility services in question here fall within the scope of services covered by § 3604(b). Accordingly, the district court's opinion to the contrary is hereby vacated, and the case is remanded for further proceedings consistent with this opinion. On remand, the district court should determine anew whether the plaintiffs' disparate impact allegations have stated a claim upon which relief may be granted under § 3604(b).[5]

The judgment of the district court is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

---

[5]  This opinion in no way forecloses the district court on remand from reevaluating the standing of the plaintiffs or from considering any other affirmative defenses asserted.

13