[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10940
_____

D.C. Docket No. 4:18-cv-01509-ACA

MAGGIE J. ROBINSON,
CODY ROBINSON,

Plaintiffs-Appellants,

versus

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY INSURANCE COMPANY,
LIBERTY MUTUAL GROUP INC.,

Defendants-Appellees

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 11, 2020)

Before WILLIAM PRYOR and GRANT, Circuit Judges, and ANTOON,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

Alabama law requires courts to construe the terms of an insurance policy according to their ordinary meaning. So unless the context suggests otherwise, the terms of a policy should not be given a technical or scientific meaning. And that rule controls this appeal. Maggie and Cody Robinson's homeowners insurance policy excluded coverage for property damage caused by insects or vermin, and Liberty Mutual Insurance Company cited that exclusion to deny coverage for an infestation of brown recluse spiders in the Robinsons' home. The Robinsons then sued for breach of contract and bad faith under Alabama law. Because brown recluse spiders are both "insects" and "vermin" under the ordinary meaning of those terms and the district court committed no error by consulting dictionaries to determine those legislative facts, Fed. R. Evid. 201(a), we affirm the dismissal of the Robinsons' complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6).

## I. BACKGROUND

After the Robinsons moved into their home, they discovered an infestation of the highly venomous brown recluse spider. Following an attempt to eradicate the infestation, the Robinsons obtained a homeowners policy from Liberty Mutual.

---

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

2

That policy "insure[d] against risk of direct loss to property . . . only if that loss is a physical loss to property." But the policy excluded from coverage any loss "[c]aused by . . . [b]irds, vermin, rodents, or insects." Liberty Mutual cited that exclusion in its letter denying coverage for a claim the Robinsons filed for damage to their home after further attempts to eradicate the infestation failed.

The Robinsons sued Liberty Mutual for breach of contract and for bad faith refusal to pay. In their complaint, the Robinsons alleged that brown recluse spiders infested every facet of their home, could not be eradicated, posed a deadly risk, and presented "a dangerous and irreparable condition" that rendered their home "unsafe for occupancy." They alleged that their insurance policy covered the loss because brown recluse spiders are neither insects nor vermin within the meaning of the exclusion.

The district court dismissed the Robinsons' complaint. It ruled that brown recluse spiders are both insects and vermin within the meaning of the policy. So the district court concluded that the Robinsons' complaint failed as a matter of law.

## II. STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim. *Ga. State Conference of the NAACP v. City of LaGrange*, 940 F.3d 627, 631 (11th Cir. 2019). We accept "the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted).

3

### III. DISCUSSION

The Robinsons argue that the district court erred in dismissing their complaint because brown recluse spiders are neither insects nor vermin. But we disagree. Based on the ordinary meaning of those terms, brown recluse spiders are both insects and vermin.

"In Alabama, the interpretation of a contract, including an insurance contract, is a question of law reviewed *de novo*." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007). Alabama courts "enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Alabama courts give the terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean." *Id.* at 1144 (alteration adopted) (internal quotation marks omitted). That is, Alabama courts ordinarily do "not define words . . . based on technical or legal terms." *Id.* at 1143; *see also Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 69 (2012) ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."). To be sure, when construing "exceptions to coverage," Alabama courts construe them "as narrowly as possible in order to provide maximum coverage." *Johnson v. Allstate Ins. Co.*, 505 So. 2d

4

362, 365 (Ala. 1987); *see also Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002). But those courts remain careful not "to rewrite policies to provide coverage not intended by the parties." *Johnson*, 505 So. 2d at 365.

Spiders are "insects" under the ordinary meaning of that term. All dictionaries we have reviewed, both modern and old, list spiders as an example of an "insect." *See, e.g.*, *Insect*, Oxford English Dictionary Online (last visited May 9, 2020), https://www.oed.com/view/Entry/96686; *Insect (in American English)*, Collins Dictionary Online (last visited May 9, 2020), https://www.collinsdictionary .com/us/dictionary/english/insect; *Insect*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2007); *Insect*, *Webster's Third New International Dictionary* (1993); *Insect*, *Webster's New International Dictionary* (2d ed. 1961); *Insect*, *Webster's New International Dictionary* (1st ed. 1920). And a "dictionary definition" is "an assertion of th[e] very meaning that an ordinary person would give a particular word" because it is "the result of an examination into the interpretation that ordinary people would give the word." *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560, 562 (Ala. 1993); *see also* Scalia & Garner, *Reading Law* app. A, at 418 ("A dictionary definition states the core meanings of a term.").

The Robinsons maintain that, scientifically speaking, spiders are arachnids, not insects. And even the dictionaries acknowledge this distinction by either

5

specifying that spiders are insects in *popular usage* or stressing that spiders are "technically" not "insects." *See, e.g.*, *Insect*, Oxford English Dictionary Online, *supra* ("[I]n popular use comprising, besides the animals scientifically so called . . . , many other arthropods, [such] as spiders . . . ."); *Insect*, *Merriam-Webster's Collegiate Dictionary*, *supra* ("[A]ny of numerous small invertebrate animals (as spiders or centipedes) that are more or less obviously segmented — not used technically."). But that technical or scientific meaning does not control our interpretation of the Robinsons' policy. *See Safeway*, 912 So. 2d at 1143–44; *Liggans*, 575 So. 2d at 571; Scalia & Garner, *Reading Law* § 6, at 69.

"Few zoological terms have been more loosely used both by scientific and popular writers" than the term "insect." *Insect*, 14 *The Encyclopædia Britannica* (11th ed. 1911). The term "insect" "was introduced to English readers in a translation (1601) of Pliny's *Natural History* by Philemon Holland, who defined 'insects' as little vermine or smal[l] creatures which have . . . a cut or division betwe[en] their heads and bodies." *Id.* (internal quotation marks omitted). In the mid-1700s, Carolus Linnæus created the basis for the modern classification system, with six classes of animals, including Insecta. *See* A.J. Cain, *Taxonomy*, Encyclopædia Britannica (last updated Jan. 17, 2020), https://www.britannica.com /science/taxonomy. Linnæus's class "Insecta" included all creatures in the modern-day classes Arachnida and Insecta. *See* E. Ray Lankester, *The Structure and*

6

*Classification of the Arthropoda*, 47 Q.J. Microscopical Sci. 523, 524 n.1 (1904).

Only "by causes which [are] not easy to trace" did "the word 'Insect' . . . become

limited" to exclude certain creatures, like spiders. *Id*. That change in meaning was

largely due to Jean-Baptiste Lamarck in the early 1800s, who created the separate

classes Arachnida and Crustacea and "assign[ed] . . . them equal rank with the

remaining Insecta of Linnæus." *Id*.; Cain, *supra*. So even the scientific community

earlier afforded the term "insect" a broad definition that included spiders.

Today, we accept that the scientific community distinguishes between

arachnids and insects, but Alabama law cautions against using technical or

scientific definitions to interpret the terms of an insurance contract. *See Safeway*,

912 So. 2d at 1143–44; *Liggans*, 575 So. 2d at 571. And dictionary definitions of

"insect" establish that an ordinary person would still understand the term "insect"

to include spiders. That the average person has yet to adopt the scientific

vernacular is not unexpected; after all, not every adult recalls the basics of their

childhood science lessons as well as they should. *Cf. Nix v. Hedden*, 149 U.S. 304,

307 (1893) (concluding a tomato was a vegetable despite its botanical

classification as a fruit because it is a vegetable "in the common language of the

people").

Brown recluse spiders are also "vermin" under the ordinary meaning of that

term. Vermin include "small common harmful or objectionable animals (as lice or

7

fleas) that are difficult to control." *Vermin*, *Merriam-Webster's Collegiate Dictionary*, *supra*. The term refers to "noxious or objectionable" creatures and includes "creeping or wingless insects (and other minute animals) of a loathsome or offensive appearance or character, esp. those which infest." *Vermin*, Oxford English Dictionary Online (last visited May 9, 2020), https://www.oed.com/view/Entry/222579; *see also Vermin*, American Heritage Dictionary of the English Language Online (last visited May 9, 2020), https://www.ahdictionary.com/word/search.html?q=vermin; *Vermin*, *Webster's Third New International Dictionary*, *supra*.

The allegations of the Robinsons' complaint alone establish that brown recluse spiders are vermin. The Robinsons alleged that their house "was infested with a large colony of highly venomous brown recluse spiders" that have "become so pervasive that a clear and present danger exists." Despite their efforts, they have been unable to eradicate the spiders, nor can they find a pest control company willing to guarantee that the infestation can ever be eradicated. We must accept those allegations as true, *Ga. State Conference*, 940 F.3d at 631, and those allegations make clear that brown recluse spiders are "small common harmful or objectionable animals . . . that are difficult to control," *Vermin*, *Merriam-Webster's Collegiate Dictionary*, *supra*, "injurious to health," *Vermin*, American Heritage

8

Dictionary of the English Language Online, *supra*, and capable of infesting, *Vermin*, Oxford English Dictionary Online, *supra.*

The few decisions that have refused to apply an exclusion from coverage for vermin are inapposite. Almost all these decisions involved mammals for which the definition of "vermin" was ambiguous. *See Marcelle v. S. Fid. Ins. Co.*, 954 F. Supp. 2d 429, 436–37 (E.D. La. 2013) (bats); *Jones v. Am. Econ. Ins. Co.*, 672 S.W.2d 879, 880 (Tex. App. 1984) (squirrels); *Umanoff v. Nationwide Mut. Fire Ins.*, 442 N.Y.S.2d 892, 893–94 (Civ. Ct. 1981) (racoons); *see also Sincoff v. Liberty Mut. Fire Ins. Co.*, 183 N.E.2d 899, 901 (N.Y. 1962) (carpet beetles). Although "vermin" might be ambiguous as to other animals, we conclude that an ordinary person would understand "vermin," in this context, to include brown recluse spiders. *See Gregory v. Nationwide Mut. Ins. Co.*, 611 F. App'x 410, 411–12 (9th Cir. 2015) (concluding that the term "vermin" in an exclusion from coverage in an insurance policy included mites, an arachnid); *Christ Episcopal Church of Bastrop v. Church Ins. Co.*, 731 So. 2d 1071, 1075 (La. Ct. App. 1999) (concluding that the term "vermin" in an insurance policy is unambiguous as to mice and rats); *N. British & Mercantile Ins. Co. v. Mercer*, 84 S.E.2d 570, 571 (Ga. 1954) (concluding that the term "vermin" in an insurance policy, although unambiguous as to rats and mice, plainly did not include squirrels); Scalia &

9

Garner, *Reading Law* at 32 ("A word or phrase is ambiguous when the question is which of two or more meanings applies . . . .").

We also reject the Robinsons' argument that the district court could not take "judicial notice" of dictionary definitions without first affording them a hearing. *See* Fed. R. Evid. 201. Rule 201 permits courts to take notice of "an adjudicative fact" that is "generally known" and "whose accuracy cannot reasonably be questioned," so long as it affords the parties an opportunity to be heard on the propriety of doing so if requested. Fed. R. Evid. 201(a)–(b), (e). But Rule 201 "governs judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "[A]djudicative facts are those developed in a particular case," while "[l]egislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally." *W. Ala. Women's Ctr. v. Williamson*, 900 F.3d 1310, 1316 (11th Cir. 2018) (internal quotation marks omitted); *see also* Fed. R. Evid. 201(a) advisory committee's note to 1972 proposed rule ("Adjudicative facts are simply the facts of the particular case."). Dictionary definitions establish legislative facts when used to answer a question of law, such as how to interpret contractual terms. *See* Fed. R. Evid. 201(a) advisory committee's note to 1972 proposed rule ("Legislative facts . . . are those which have relevance to legal reasoning and the lawmaking process . . . in the formulation of a legal principle or ruling by a judge or court . . . .").

10

## IV. CONCLUSION

We **AFFIRM** the dismissal of the Robinsons' complaint.