[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 20-11425

————————————————

RONALD COX,

Plaintiff-Appellant,

*versus*

DEPUTY WARDEN BENJIE NOBLES,
OFFICER CRUMP,
WARDEN PERRY,
SERGEANT DAVIS,
WARDEN TED PHILBIN,
UNIT MANAGER HARRIS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

D.C. Docket No. 1:19-cv-00031-JRH-BKE

_____

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.
JILL PRYOR, Circuit Judge:

Ronald Cox, a transgender woman, sued six Georgia Department of Corrections ("GDC") officials, alleging that other prisoners sexually assaulted and physically attacked her[1] at three Georgia prisons. Invoking 42 U.S.C. § 1983, Cox alleged that the GDC officials, in failing to protect her, violated her constitutional rights under the Eighth Amendment. She further alleged that three of the six GDC officials exhibited deliberate indifference to the substantial risk of serious harm she faced as a transgender inmate by failing to comply with the Prison Rape Elimination Act (the "PREA"), 34 U.S.C. §§ 30301, *et seq.*

_____

[1] Cox has been inconsistent in the use of self-referential gender pronouns. In the amended complaint, Cox used the pronouns "he/him/his." In the reply brief on appeal, however, Cox uses the pronouns "she/her/hers." Because Cox's reply brief is the most recent of these filings, we assume Cox currently wishes to use the pronouns "she/her/hers."

The district court granted the GDC officials' motion to dismiss Cox's amended complaint on the ground that the GDC officials were entitled to qualified immunity. The district court determined that Cox failed to allege facts sufficient to establish that the GDC officials violated her Eighth Amendment rights. The district court also rejected Cox's claim against three of the defendants based on their alleged failure to comply with the PREA. Although our analysis differs from the district court's as to Cox's Eighth Amendment claim against one of the GDC officials, Unit Manager Harris,[2] we ultimately agree with the district court's conclusions. After careful consideration and with the benefit of oral argument, we affirm the district court.

## I.    BACKGROUND[3]

## A.    Factual Background

Cox was assaulted at three different prisons for male inmates: Autry State Prison, Central State Prison, and Augusta State

---

[2] Cox's amended complaint does not provide the first names for four of the GDC officials.  She styles those four GDC officials as follows: "Unit Manager Harris," "Officer Crump," "S[er]g[ean]t Davis," and "Warden Perry." Doc. 16 at 2–3 ¶¶ 3–6.

[3] When reviewing an order granting a motion to dismiss, we accept as true all well-pled allegations in the operative complaint and construe them in the light most favorable to the plaintiff. *See Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1218 n.2 (11th Cir. 2016). We therefore recite the facts as Cox has alleged them.

Medical Prison. At each of these institutions, Cox received estrogen injections, causing her to present with female features. Doc. 16 at 4 ¶ 10. Cox's identity as a transgender woman within these male prisons made her a target for sexual and other physical abuse she was forced to endure at the hands of other inmates. In this section, we review the allegations about each assault she suffered and then the procedural history of this case.

Cox's story begins at Autry. After arriving at Autry, she filed a "P.R.E.A[.] complaint" with Benjie Nobles, a deputy warden at the prison. *Id.* ¶ 11. The amended complaint contains no information about the contents of this, or any other, PREA document Cox filed with any prison official. But after Cox filed it, Nobles "had [Cox] moved into a cell with Rashad Stanford," another prisoner, who threatened Cox with a weapon and sexually assaulted her. *Id.*

Following the assault, Cox reported the incident to another officer, Crump.[4] Crump took no action to separate Cox and Stanford, even though Cox notified Crump that Stanford "had a

---

[4] Although Cox named Crump as a defendant in her amended complaint, she never served him with a copy of the complaint, and the district court dismissed her claim against him. *See* Fed. R. Civ. P. 4(m). Cox does not argue on appeal that the district court erred in dismissing her claim against Crump and thus has abandoned any challenge to the dismissal of that claim. *See Timson v. Sampson*, 518 F.3d 870, 874 ("[I]ssues not briefed on appeal . . . are deemed abandoned."). Thus, we do not discuss further Cox's claim against Crump.

shank." *Id.* at 5 ¶ 12. In addition to speaking with Crump, Cox "immediately filed a[nother] PREA." *Id* ¶ 13. Nobles investigated the incident but initially took no action to separate her from Stanford. Cox was then sent to the hospital for medical attention. Upon her return, she was "transferred out of the cell with [Stanford] and placed on lockdown for 30 days until [s]he was transferred to Central State Prison." *Id.* ¶ 14.

After arriving at Central, Cox requested "PREA protection" from Perry, the prison's warden. *Id.* at 6 ¶ 15. When Perry failed to grant this request, Cox "filed grievances about not being protected in accordance with PREA." *Id.* After Cox filed these PREA documents, Benjamin Israel, another Central prisoner, attacked Cox from behind while she was watching television. Israel "hit [Cox] so hard that [s]he fell to the ground." *Id.* He then "proceeded to kick [her] in the abdomen and punch [her] continuously." *Id.* No prison official broke up the fight; Cox attributed this lack of response to Central's being "short staffed." *Id.* She alleged that there was only "one officer watching four pods." *Id.* About four months after the attack, Cox was transferred to Augusta.

Upon arriving at Augusta, Cox requested that Ted Philbin, the warden there, provide her "PREA protection." *Id.* ¶ 16. According to Cox, she was "not placed in a safe environment provided by PREA." *Id.* She "filed grievances" to that effect. *Id.*

While at Augusta, Cox was assaulted twice by another prisoner, Terry Frasier. The first assault began after Cox entered the shower, where Frasier was masturbating. Thinking Cox was

watching him, Frasier threatened her. Later that day, Frasier pulled out a shank and attacked Cox, who "fought back with a lock in a sock." *Id.* at 7 ¶ 17.

Following the first assault, Cox filed a PREA document, the substance of which was relayed to Harris, a unit manager at the prison.[5] After no action was taken, Cox approached Harris and asked "why Frasier had not been moved from the cell." *Id.* ¶ 20. Harris responded that "Cox should be moved." *Id.* Prison officials then moved Cox to a new cell, but she remained in the same dorm as Frasier.

Sometime after Cox was relocated, a second assault took place. During this incident, she "was critically stabbed by Terry Frasier and hospitalized for six days." *Id.* at 8 ¶ 21. When she returned from the hospital, Cox was placed "on lockdown in a PREA dorm." *Id.*

---

[5] The amended complaint referred to this official as "Sgt. Harris." Doc. 16. at 7 ¶ 20. Cox made no mention of "Sgt. Harris" when formally listing the parties under the header "Defendants." Doc. 16 at 2–3. Instead, the amended complaint listed "Unit Manager Harris" as a defendant. *Id.* at 3 ¶ 6. The district court treated "Sgt. Harris" and "Unit Manager Harris" as the same person, and the briefing on appeal assumes that references to "Sgt. Harris" are references to defendant Unit Manager Harris. For the sake of clarity, we do the same.

## B.    Procedural History

Cox brought this § 1983 action alleging that the GDC officials violated her constitutional rights. Specifically, Cox alleged that at all three prisons, officials Nobles, Perry, Davis,[6] and Harris violated her Eighth Amendment rights through their failure to protect her. In addition, Cox alleged that Nobles,[7] Perry, and Philbin were "deliberately indifferent" under the PREA because they were notified of Cox's transgender status and failed to "take affirmative steps" to protect her from attacks or transfer her to "PREA segregated facilities or dormitories." *Id.* ¶ 22. Cox sought compensatory damages against all defendants.

The GDC officials moved to dismiss Cox's amended complaint. Invoking the affirmative defense of qualified immunity, they argued that they had acted in their discretionary authority

---

[6] The district court noted that the amended complaint contained no allegations about Davis. As a result, the district court dismissed Cox's claims against Davis for failure to state a claim. Cox does not argue on appeal that the district court erred in dismissing her claim against Davis and thus has abandoned any challenge to the dismissal. *See Timson*, 518 F.3d at 874.

[7] Cox alleged this claim against "all wardens," but she did not individually name the warden defendants. Doc. 16 at 8 ¶ 22. Thus, it is unclear whether Cox intended to assert this claim against Nobles, who was a deputy warden. Cox's factual allegations against Nobles are similar to those she raised against the other warden defendants, however. On appeal, the GDC officials assume that the claim was alleged against Nobles, and Cox did not object to that assumption in her reply brief. We therefore join the defendants in assuming that she intended to assert this claim against Nobles.

and the burden was on Cox to allege violations of federal law that were clearly established at the time. As to Cox's traditional Eighth Amendment claims, the officials argued that her factual allegations were inadequate to state a violation of federal law. As to her claims based on the PREA, the GDC officials argued that alleged PREA violations alone do not constitute Eighth Amendment violations. Relatedly, the GDC officials argued that the PREA did not create any federal rights enforceable through § 1983.

The district court granted the motion as to all defendants, concluding that Cox failed to allege facts sufficient to state a claim and that the GDC officials were entitled to qualified immunity. Regarding Cox's Eighth Amendment claims against Nobles, Perry, Davis, and Harris, the district court concluded that she failed to allege facts sufficient to state a constitutional violation. For her claims against Nobles, Perry, and Philbin based on their alleged failure to comply with the PREA, the district court rejected what it saw as Cox's attempt to create an end-run around the Eighth Amendment analysis; it dismissed those claims, reasoning that PREA violations are not *per se* Eighth Amendment violations. After concluding that Cox had failed to allege a constitutional violation, the district court dismissed all claims on qualified immunity grounds.[8]

---

[8] Cox represents in her briefing that the district court did not answer the question of whether the GDC officials were entitled to qualified immunity. The GDC officials disagree; they take the position that Cox's amended com-

This is Cox's appeal.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). In our review, we accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Ga. State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 631 (11th Cir. 2019). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A district court may properly dismiss a complaint if it rests only on "conclusory allegations, unwarranted factual deduc-

plaint was dismissed on qualified immunity grounds. The district court noted that, in answering whether Cox had stated a claim, it was answering whether the GDC officials had succeeded in asserting the affirmative defense of qualified immunity. We accept the district court's characterization of its ruling at face value.

tions or legal conclusions masquerading as facts." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III.    DISCUSSION

The affirmative defense of qualified immunity "generally shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official asserting a qualified immunity defense bears the initial burden of showing "he was acting within his discretionary authority." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Here, Cox does not dispute that the GDC officials were acting within their discretionary authority. The burden therefore shifts to Cox to show that, when we view the complaint's allegations in her favor, "(1) the defendant[s] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

We proceed by addressing whether Cox's amended complaint alleged a violation of federal law[9] and then address Cox's claims involving the PREA.

A.    Cox Failed to State an Eighth Amendment Failure-to-Protect Claim.

The Eighth Amendment prohibits the federal government, and state governments through the Due Process Clause of the Fourteenth Amendment, from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. The prohibition on cruel and unusual punishments requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). The duty to protect encompasses "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted). When a plaintiff invokes this principle in a lawsuit against prison officials, we often refer to the plaintiff's claims as "failure-to-protect" claims.

To succeed on a failure-to-protect claim, a plaintiff must satisfy three elements. First, the plaintiff must show that she was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the plaintiff must show that the "prison official [had] a sufficiently culpable state of mind," amounting to

---

[9] Because we conclude that Cox failed to allege violations of federal law, we do not decide whether the federal law in question was "clearly established" at the time of the alleged assaults.

"deliberate indifference." *Id.* (internal quotation marks omitted). Third, and finally, the plaintiff must demonstrate causation—that the constitutional violation caused her injuries. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Cox must establish all three elements to prevail on her failure-to-protect claims.

This appeal turns on whether Cox adequately alleged the second element—deliberate indifference. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "Deliberate indifference has two components: one subjective and one objective." *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020) (internal quotation marks omitted). A prisoner must establish "both that [1] the defendant actually (subjectively) knew that [the prisoner] faced a substantial risk of serious harm and that [2] the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* (alterations adopted) (internal quotation marks omitted). Because the deliberate-indifference analysis is determinative of Cox's Eighth Amendment claims, we examine whether Cox plausibly alleged that each defendant acted with deliberate indifference.

### 1. For the Attack at Autry State Prison, Cox Failed to Allege that Nobles Acted with Deliberate Indifference.

Cox failed to allege the subjective component of deliberate indifference against Nobles. To satisfy the subjective component, Cox had to allege that before the assault at Autry Nobles was

"aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that Nobles "dr[ew] the inference." *Farmer*, 511 U.S. at 837. But none of the allegations in the amended complaint indicated that Nobles was aware of any danger facing Cox before the assault at Autry.

To be sure, Cox alleged that she filed a "P.R.E.A. complaint" before prisoner Stanford assaulted her and that Nobles reviewed that document. Doc. 16 at 4 ¶ 11. But the amended complaint provided no clue about what the PREA complaint communicated. We cannot tell from Cox's allegations whether in the PREA complaint she, for example, informed Nobles of her identity as a transgender person, requested segregated housing, or communicated to Nobles that she believed she was in danger. Instead, the amended complaint merely alleged that after receiving the PREA complaint—the contents of which were unspecified— "Nobles . . . had [Cox] moved into a cell with Rashad Stanford who sexually assaulted and threatened [her] with a weapon." *Id.* We find no allegation to support an inference that Nobles knew Stanford posed a danger to Cox. We thus conclude that Cox failed to allege Nobles acted with the deliberate indifference necessary to sustain her Eighth Amendment claim against him.

### 2.    For the Attack at Central State Prison, Cox Failed to Allege that Perry Acted with Deliberate Indifference.

We turn next to Cox's failure-to-protect claim against Perry, the warden at Central. Only one paragraph in the amended complaint contained allegations about Perry. Cox alleged that

upon her transfer to Central she filed a PREA document, which Perry reviewed. As with the Autry PREA allegations, the amended complaint shed no light on what the PREA document communicated to Perry. We do not know, for example, whether Cox detailed what had happened to her at Autry. After Perry received the PREA document, Cox alleged, prisoner Israel physically attacked her while she was watching television. Here again, we find no allegations to support an inference that before the assault Perry was subjectively aware of any danger facing Cox at Central. Thus, Cox failed to allege that Perry acted with deliberate indifference.

### 3.    For the Attacks at Augusta State Medical Prison, Cox Failed to Allege that Harris Acted with Deliberate Indifference.

By contrast, as to Harris, Cox sufficiently alleged the subjective component of the deliberate indifference test. Our decision in *Rodriguez v. Secretary for Department of Corrections* offers insight into the subjective component. 508 F.3d 611 (11th Cir. 2007). In *Rodriguez*, we considered whether two prison-official defendants, Raymond Kugler and Charles Johnson, were subjectively aware of a substantial risk of serious harm facing the prisoner-plaintiff, Miguel Rodriguez, ahead of a brutal prison attack. *Id.* at 613. The summary judgment record indicated that Rodriguez "verbally informed [Defendant] Kugler" on "at least two occasions" of threats made against his life. *Id.* at 618. Similarly, Rodriguez "spoke to [Defendant] Johnson on a number of occasions

regarding the threats on his life." *Id.* at 614. Besides those conversations, Rodriguez filed "an Inmate Request form" in which he communicated that he feared for his safety and requested protection. *Id.* In vacating the district court's grant of summary judgment for the defendants, we concluded that Rodriguez's communications comprised "enough evidence of subjective knowledge to get [Rodriguez's] claim to a jury." *Id.* at 618.

We find Cox's factual allegations, assumed to be true, more compelling than the summary judgment evidence in *Rodriguez*. Cox alleged that Harris was aware of a fight between Frasier and Cox in which Frasier wielded a shank, and Cox wielded a lock in a sock.[10] According to the amended complaint, then, Harris was aware of more than the mere threat of future violence present in *Rodriguez*—Harris was aware that violence had already taken place. More than that, Cox alleged Harris was aware that she and Frasier remained cellmates after the assault, making further conflict likely. And Cox alleged that Harris actually drew the inference that Cox was in danger because Harris agreed that Cox and Frasier should be separated. In light of our decision in *Rodriguez*,

---

[10] Cox alleged that unnamed officials were aware of the first assault at Augusta and that after the assault Harris agreed that Cox should be moved out of the cell she shared with Frasier. Taken together, these allegations support an inference that Harris knew about the first assault before the second assault took place.

Cox sufficiently alleged that Harris had subjective knowledge that Cox faced a substantial risk of serious harm.[11]

But Cox failed to state a failure-to-protect claim against Harris nonetheless. Having satisfied the subjective component of deliberate indifference, Cox was also required to allege facts suggesting that Harris acted in an objectively unreasonable manner. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." *Rodriguez*, 508 F.3d at 620 (internal quotation marks omitted). But a prison official "who act[s] reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 837.

---

[11] The district court's analysis diverges from ours on this point. The district court concluded that Cox failed to allege Harris was subjectively aware of a substantial risk of serious harm. Still, we may affirm on other grounds supported by the record. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) ("[W]e may affirm [a district court's] judgment on any ground that finds support in the record." (internal quotation marks omitted)).

Our decision in *Mosley* guides us on what constitutes an objectively reasonable response by a prison official who is subjectively aware of a substantial risk of serious harm facing a prisoner. In *Mosley*, we affirmed the district court's grant of summary judgment for the prison-official defendant, Zachery. 966 F.3d at 1276. The summary judgment record indicated that the prisoner plaintiff, Mosley, had told Zachery of a threat made against Mosley's life by another prisoner, Taylor. *Id.* at 1268. After Mosley reported the threat, Zachery indicated that she was available to talk with Mosley about the threat and that she would "look into" removing Taylor from Mosley's dorm. *Id.* at 1269. Zachery parted from the conversation by sending Mosley "to the safety of count time"—a supervised procedure in which prisoners stand in front of their cells for a formal headcount. *Id.* at 1275. But just after count time, Taylor attacked Mosley. *Id.* at 1269. The district court found that although Zachery was subjectively aware of danger facing Mosley, she was entitled to summary judgment because it was not objectively unreasonable to wait until after count time, a period when prisoners were visible and supervised, to take action. *Id.* at 1272.

In *Mosley*, we noted that the objective component is a context-specific one. *Id.* at 1272. We posed a hypothetical in which "a prisoner [comes] running to a corrections official as the prisoner [is] being chased by his shiv-wielding cellmate who [is] yelling, 'I will kill you.'" *Id.* at 1271. Under those circumstances, we observed, it might be "unreasonable to respond in any manner other

than immediately placing [the] threatened prisoner in protective custody." *Id.* But in less exigent circumstances "it is not an unreasonable response to see that the prisoners are separated and supervised while the official investigates the threat and looks into her options." *Id.* at 1271–72. Put differently, the reasonableness of the response is dependent upon the exigence of the specific circumstances.

The trouble with Cox's claim against Harris is that there are no factual allegations to help us understand where this case falls on that sliding scale. Cox alleged that after the fight with Frasier she was moved to a new cell in the same dorm, a move that Harris had some role in accomplishing.[12] But there are no allegations to suggest that in relocating Cox to another cell in the same dorm Harris knew that Cox and Frasier would encounter each other in an unsupervised setting. Nor are there other allegations that would give us insight into the reasonableness of Harris's actions. Particularly given *Mosley*'s recognition that separating prisoners is among the reasonable responses a prison official can take in appropriate circumstances, we cannot say Cox has adequately alleged that Harris acted in objectively unreasonable manner. As a

---

[12] It is unclear from the amended complaint, which used passive voice, whether Harris was personally responsible for moving Cox to a new cell. The GDC officials represent in their brief, however, that it was Harris who moved Cox. Cox does not challenge this representation in her reply.

result, we agree with the district court that Cox failed to state a claim against Harris.

We emphasize that we do not mean to say that moving a prisoner from one cell to another in the same dorm is always an objectively reasonable way to prevent one prisoner from harming another. Rather, today we merely decide that the amended complaint in this case fails to provide any context from which we can say that Harris's actions were objectively unreasonable.

## B.   Cox Failed to Allege an Eighth Amendment Claim Based on Violations of the PREA.

Cox made allegations of a different nature against three defendants—Nobles, Perry, and Philbin. The relevant paragraph in the amended complaint alleged:

> Defendants failed to protect Plaintiff Cox from physical and sexual attacks for which they were deliberately indifferent while Plaintiff was incarcerated at Autry State Prison, Central State Prison, and Augusta State Medical prison. As the Complaint alleges that all wardens were notified of the transgender status of the Plaintiff, and PREA requires that the wardens take affirmative steps to classify such transgender individuals who are at risk of sexual attack such as the Plaintiff and take[] steps to protect them from attacks by other inmates and to transfer them to PREA segregated facilities or dormitories. The wardens took no steps and were deliberately indifferent to the Plaintiff's sexual status as well as not

>    taking any steps to house [her] in a protected and
>    segregated environment.

Doc. 16 at 8 ¶ 22. The above language has caused confusion in this case. Did Cox invoke the PREA as a private right of action? Or did she allege that the GDC officials violated her Eighth Amendment rights by violating the PREA? The GDC officials took the former interpretation. The district court took the latter.

We agree with the district court's interpretation. The amended complaint alleges one "Cause of Action" that references the PREA. *Id.* In support of this cause of action, Cox alleged that the defendants were "deliberately indifferent" to the risk of sexual attack Cox faced as a transgender inmate, Doc. 16 at 8–10 ¶¶ 22, 24, 26–28, and that they should have understood the "substantial risk of serious harm." Doc. 16 at 9–10 ¶¶ 26–27. This is Eighth Amendment language. And Cox has consistently described this cause of action in Eighth Amendment terms. She argued before the district court that the failure to comply with PREA amounted to "deliberate[] indifferen[ce]." Doc. 22 at 3. She makes the same argument on appeal. Further, in her reply brief on appeal, Cox confirms that she does not believe the PREA provides an independent cause of action. Thus, we need not—and do not—decide today whether the PREA offers a standalone cause of action.

Instead, we consider Cox's argument that a violation of the PREA violates the Eighth Amendment *per se*. This argument is without merit. We find no authority to support the proposition that a litigant can circumvent long-established Eighth Amend-

ment jurisprudence by alleging a violation of the PREA in a conclusory fashion. Cox's claim, whether based on a violation of PREA or not, is in essence a claim that the defendants failed to protect her from abuse by other inmates. The Supreme Court set out the test for Eighth Amendment failure-to-protect claims in *Farmer*. As we explained above, Cox failed to state a claim for relief under the *Farmer* standard. Although we have no doubt that PREA documents *could* put prison officials on notice of a substantial risk of serious harm to an inmate, in this case Cox failed to allege anything to help us discern what the PREA documents said. Thus, she failed to allege that those documents made prison officials subjectively aware of a substantial risk of serious harm. So, considering Cox's PREA allegations in the context of our traditional Eighth Amendment inquiry, we must reject her claim.

## IV.    CONCLUSION

For the foregoing reasons, the district court's order is affirmed.

**AFFIRMED.**